## MIDLAND FINANCIAL CORPORATION, Petitioner-Respondent,

### v.

## Wisconsin DEPARTMENT OF REVENUE, Appellant-Petitioner.

Supreme Court

*No. 82–396.  Argued October 31, 1983.—Decided December 29, 1983.*

(Also reported in 341 N.W.2d 397.)

For the appellant-petitioner the cause was argued by *John C. Murphy*, assistant attorney general, with *Bronson C. La Follette*, attorney general, on the briefs.

For the petitioner-respondent there was a brief by *Gerald S. Walsh, David C. Keating* and *Walsh and Nohr*, Milwaukee, and oral argument by *Gerald S. Walsh*.

DAY, J.  This is a review of a court of appeals decision affirming a judgment of the circuit court for Milwaukee county, Hon. Patrick T. Sheedy, circuit judge. The circuit court judgment reversed a decision and order of the Wisconsin Department of Revenue assessing additional corporate franchise taxes against Midland Financial Corporation.  There are three questions on this review: 1) Is dividend income received by a bank holding company and deductible from gross income under sec. 71.04(4), Stats., required to be included in the company's business loss carry forward under sec. 71.06; 2) Is the requirement of sec. 180.787, that in order to preserve its remedy a corporation must commence "action or other proceeding" on any right or claim within two years after dissolution satisfied by initiation of proceedings before the Wisconsin Tax Appeals Commission within the statutory time limit; 3) Is a dissolved corporation which has satisfied the requirement of sec. 180.787, an "aggrieved person" entitled to sue under sec. 227.16.  We conclude (1) Deductible dividend income is not included in calculating the business loss carry forward under sec. 71.06; (2) Initiation of proceedings before the Wisconsin Tax Appeals Commission satisfies the requirement of sec. 180.787, for survival of remedies after dissolution; (3) A dissolved corporation which has capacity to sue under sec. 180.787, is an "aggrieved person" for the purposes of sec. 227.16.  We therefore affirm the decision of the court of appeals.

The facts are undisputed. In 1971 and 1972, Midland Financial Corporation (Midland), a Wisconsin corporation, operated as a bank holding company. It owned a controlling interest in Midland National Bank, Park State Bank, Midtown State Bank, and Citizens State Bank and Trust Company through an ownership interest in Wausau Financial Corporation and Homassassa Springs Bank. Midland owned the controlling interest in Midland Leasing Services, Inc. and Equity Management Associates, Inc. which performed leasing and consulting services for Midland's bank subsidiaries. Midland also owned two small office buildings, one of which was leased in part to Midland National Bank.

In 1971, Midland received $112,633 of dividend income from its subsidiary corporations which it included as gross income in its Wisconsin corporate tax return. It then deducted that dividend income from its gross income pursuant to sec. 71.04(4), Stats. 1971.[1] As a result,

[1] Section 71.04(4), Stats. 1971, provides:

"**71.04. Deductions from gross income of corporations.** Every corporation, joint stock company or association shall be allowed to make from its gross income the following deductions: . . .

"(4) Dividends, except stock dividends not taxable pursuant to s. 71.305, received from any corporation conforming to all of the requirements of this subsection. Such corporation must have filed income tax returns as required by law and the income of such corporation must be subject to the income tax law of this state. The principal business of the corporation must be attributable to Wisconsin and for the purpose of this subsection any corporation shall be considered as having its principal business attributable to Wisconsin only if 50 percent or more of the entire net income or loss of such corporation after adjustment for tax purposes (for the year preceding the payment of such dividends) was used in computing the taxable income provided by ch. 71. If the net incomes of several affiliated corporations have been combined for the purpose of determining the amount of income subject to taxation under the statutes, the location of the principal business of such group shall determine the taxable status of dividends paid, but intercompany dividends passing between affiliated corpora-

Midland reported a net loss of $156,534 in 1971. This amount was carried forward as a loss and used as a deduction on its 1972 corporate tax return.

The Wisconsin Department of Revenue (Department) audited Midland's tax returns in September of 1976. As a result of the audit, the Department reduced the 1971 loss of $156,534 by $112,633 of dividend income received in that year under authority sec. 71.06, Stats. 1971.[2] That section provides that a corporation may carry forward a "net business loss . . . to the extent not offset by other items of income of the same year." The Department regarded the dividends received by Midland as "other items of income." This reduced the loss carry forward to $43,901 which was subtracted from Midland's

tions whose incomes are included in the taxable income of the group shall not be assessed as group income."

[2] Section 71.06, Stats. 1971, provides:

"**71.06. Corporation business loss carry forward.** If a corporation in any year sustains a net business loss, such loss, to the extent not offset by other items of income of the same year, may be offset against the net business income of the subsequent year and, if not completely offset by the net business income of such year, the remainder of such net business loss may be offset against the net business income of the following year. For the purposes of this section, net business income shall consist of all the income attributable to the operation of a trade or business regularly carried on by the taxpayer, less the deduction of business expenses allowed in s. 71.04. The addition to and deductions from income of urban transit companies under s. 71.18(1) shall also be used in determining the net business loss of such companies to be offset against the net business income as determined under s. 71.18 of subsequent years under this section. Any net business loss for any year prior to the calendar year 1955 or corresponding fiscal year shall not, however, be recomputed under s. 71.18. A net business loss incurred by a corporation in a calendar or fiscal year ending after July 1, 1970, may be carried forward and offset against net business income of subsequent years, pursuant to and in the manner described in this section, in the next succeeding 5 income years."

1972 business income of $94,741 resulting in an increase in Midland's taxable income for 1972.

Midland petitioned the Department for a redetermination of the 1972 assessment. That petition was denied. In January of 1977, Midland filed for review of the assessment with the Wisconsin Tax Appeals Commission (Commission) which affirmed the decision of the Department in a decision and order dated November 20, 1980. In January of 1978, Midland was liquidated and dissolved. In December of 1980, Midland, suing under its corporate name, brought an action under ch. 227, Stats., in the circuit court for Milwaukee county for review of the Commission's decision. The circuit court reversed the decision of the Commission, holding that the dividends were not "other items of income" under sec. 71.06, Stats., and should not have been used to reduce the business loss carry forward for 1971. The Department appealed to the court of appeals which affirmed the judgment of the circuit court. *Midland Fin. Corp. v. Revenue Dept.*, 110 Wis. 2d 261, 328 N.W.2d 866 (Ct. App. 1982). This court accepted the Department's petition for review.

The first question is whether dividends received by Midland in 1971 must be subtracted from its net business loss in calculating the business loss carry forward under sec. 71.06, Stats. 1971. In answering that question we must construe that portion of sec. 71.06, which governs the calculation of business loss carry forward. We must also consider the purposes and effect of sec. 71.04 (4), which provides for a tax deduction for certain dividends.

This court has established a number of rules of construction to be applied when the department of revenue and the taxpayer cannot agree on the proper interpretation of the tax laws. The general rule is that unless the

statute is unclear or ambiguous, it is the duty of the court to give words their obvious and ordinary meaning. *Transamerica Financial Corp. v. Dept. of Revenue,* 56 Wis. 2d 57, 64, 201 N.W.2d 552 (1972). If the language of the statute is ambiguous, this court will endeavor to ascertain and give effect to the intent of the legislature as disclosed by the scope, history, context, subject matter and object of the statute. *Depart. of Transp. v. Transp. Comm.,* 111 Wis. 2d 80, 88, 330 N.W.2d 159 (1983). In general, ambiguity in revenue laws is to be resolved against the taxing government. *Marina Fontana v. Fontana-on-Geneva Lake,* 111 Wis. 2d 215, 227, 330 N.W.2d 211 (1983). However, the business loss carry forward authorized by sec. 71.06, Stats., falls within the category of tax privileges which, as matters of legislative grace, must be strictly construed against the taxpayer. *Hall Chevrolet Co., Inc. v. Dept. of Revenue,* 81 Wis. 2d 477, 484, 260 N.W.2d 706 (1978). In order to qualify for the carry forward, Midland must bring itself within the terms of the statute. *Hall Chevrolet,* 81 Wis. 2d at 484.

The pertinent portion of sec. 71.06, Stats., provides that "if a corporation in any year sustains a net business loss, such loss, to the extent not offset by other items of income of the same year, may be offset against the net business income of the subsequent year." Neither "net business loss" nor "other items of income" is defined in the statute. "Net business income" is defined as "all the income attributable to the operation of a trade or business regularly carried on by the taxpayer, less the deduction of business expenses allowed in s. 71.04."

The dispute focuses principally on the interpretation to be given to the phrase "other items of income." Midland argues that the phrase must be understood to mean income that is not business income. It points out that the only income mentioned in the statute to which the word

"other" can have reference is the net business income against which the loss carry forward is offset. From this it concludes that the contrast implied in the use of the word other is between business and non-business income. It then cites this court's holding in *Hall Chevrolet* for the proposition that dividend income received by a bank holding company such as Midland is business income.

The Department argues that the statute does not set up an antithesis between business income and nonbusiness income and therefore the question of whether dividends received by a holding company constitute business income is irrelevant. Such a reading, it is argued, would render the phrase "other items of income" meaningless since business income is all the income of a business. That argument loses most of its force when it is recalled that prior to 1965, sec. 71.06, Stats., referred to a "taxpayer" rather than to a "corporation." Viewed as applicable to both individuals and corporations, the statute may be reasonably interpreted to allow a carry forward of net business loss reduced by nonbusiness income.

The Department reads "other items of income" to mean all income which was not included in the calculation of the net business loss. Since the dividend income at issue in this case is deductible from gross income under sec. 71.04 (4), Stats., it is not included in the calculation of the loss.

The Department also seeks to have the business loss carry forward reduced by the taxpayer's dividend income by including the dividends in the calculation of the taxpayer's net business loss. The Department argues that net business loss under sec. 71.06, Stats., is not the same thing as loss for tax purposes. It points out that net business income in sec. 71.06, is defined as "all the income attributable to the operation of a trade or business

regularly carried on by the taxpayer, less the deduction of *business expenses* allowed in sec. 71.04." (Emphasis added). It then refers to the statement made in *Hall Chevrolet* that " 'net business loss' is in some sense the reverse of 'net business income' " (81 Wis. 2d at 485), and argues that dividends are not business expenses and therefore are not deductible in calculating net business loss.

*Hall Chevrolet* does not hold that net business loss is the exact negative image of net business income. The issue in that case was whether a loss sustained by a car dealership in the sale of its principal place of business was includible in calculating the taxpayer's net business loss for carry forward purposes. The Court stated that since net business loss was not defined in the statute, its meaning should be deduced by analogy to the definition of net business income. A net business loss therefore, would be a loss "attributable to the operation of the trade or business regularly carried on by the taxpayer." The Department agreed with that approach but argued that since the taxpayer was in the business of selling cars, not real estate, its loss on the sale of its place of business was not a business loss. The court disagreed stating that while the loss must be incurred in the operation of the taxpayer's trade or business, it need not result from a transaction of the kind in which the taxpayer regularly indulges.

Thus the court's opinion focused exclusively on the part of the statute that defines net business income as income attributable to the operation of the taxpayer's trade or business; it did not deal with the part of the statute which permits deduction from income for business expenses allowed under sec. 71.04, Stats. Therefore, it did not address the Department's argument in this case that only some of the items named in sec. 71.04,

(i.e., those that are "business expenses") may be used in calculating the net business loss.

Even if we accept the Department's position that net business loss is the exact opposite of net business income, it does not follow that the words "business expenses" have the effect of allowing the taxpayer to reduce its income by some, but not all, of the deductions allowed under sec. 71.04, Stats., in calculating the net business income. The legislature has not, in either sec. 71.06 or sec. 71.04, distinguished between deductions that constitute business expenses and those that do not. The term "business expenses" can reasonably be read as a term of description rather than a term of limitation.

Hence, the Department proposes two alternative means for accomplishing the same result: the Department proposes to reduce a corporation's business loss carry forward by the amount of its deductible dividends either by characterizing dividends as "other items of income," or by disallowing the deduction for dividends in the calculation of the corporation's "net business loss." The fact that the Department is able to offer two incompatible interpretations of the statute, both of which support its position, only shows that the words of the statute simply are not clear. Moreover, neither of the readings advanced by the Department is any more compelling than the interpretation urged by Midland and accepted by both the circuit court and the court of appeals, i.e., that business losses are losses attributable to the taxpayer's trade or business and other income is nonbusiness income.

We conclude that sec. 71.06 is reasonably susceptible of differing interpretations and therefore ambiguous. Hence, we must attempt to construe the statute in a way which best serves the legislative intent as revealed by the

scope, history, context, subject matter and the object intended to be remedied or accomplished by the statute. *Depart. of Transp. v. Transp. Comm.,* 111 Wis. 2d at 88.

This court has not previously discussed the purpose of the loss carry forward provision contained in sec. 71.06, Stats. However, the purpose of the federal counterpart to sec. 71.06, was well set out in the case of *Vreeland v. United States,* 289 F.2d 941 (Ct. Cl. 1961). In that case, the United States Court of Claims pointed out that computing gains and losses for tax purposes on an annual basis, as required by federal income tax laws, lays heavy emphasis on the timing of the receipt of income. This may result in inequality of the total tax burden among those with similar income. Loss carry forward provisions are one of a number of devices which relax the annual accounting requirement by bridging the traditional accounting period boundaries. Specifically, the purpose of the federal carryover statute is "to permit taxpayers to set off their lean years against their lush years." 289 F.2d at 945.

The purposes of the federal statute is also explained in *5 Mertens, Law of Federal Income Taxation* sec. 29.01 (rev. ed. 1980) :

"This provision is in effect an averaging provision which allows a loss to be carried to years other than the year in which the loss arose. Thus, the provision itself does not provide for an additional deduction of an item of expense not already allowed by the Code. Rather, it only provides for the spreading or averaging of deductions already allowed under the Code over more than one taxable year, where such deductions exceed gross income for the year in which such a deduction arose."

We conclude that a similar purpose underlies the Wisconsin loss carry forward provision.

It is also necessary in deciding whether dividends should be used to reduce the business loss carry forward to consider the effect of sec. 71.04(4), Stats. That section provides for a deduction from gross income for certain dividends. In calculating its net income for 1971, Midland first included the $112,633 in dividends in arriving at gross income and then deducted the same amount under authority of sec. 74.04(4). The net effect is that the dividends were not subject to taxation in the year in which they were received.

Section 71.04(4), Stats., permits a deduction by a corporation for dividends received from any corporation provided that such corporation has filed income tax returns as required by law and that the income of such corporation be subject to the income tax law of the state. It is clear, therefore, that the reason for the preferential tax treatment for dividends is to prevent double taxation. If the income was subject to taxation when earned at the corporate level, it will not be taxed a second time when paid out as dividends to another corporation.

We conclude that in order to give effect to the averaging provisions of sec. 71.06, Stats., and allow the taxpayer the full benefit of the dividend deduction allowed under sec. 71.04(4), dividends should not be subtracted from the net business loss to reduce the amount of the loss carry forward. As noted above, the purpose of the loss carry forward provision is to relax the sometimes unfair boundaries of the annual accounting system. It does not create an additional deduction not already allowed, but simply permits a spreading or averaging of deductions elsewhere specifically provided for. The dividend deduction claimed by Midland in this case has its source in the clear and uncontroverted language of sec. 71.04(4). Nowhere has the legislature expressed its intention to limit the deduction for dividends received to

the year of receipt, or to restrict the benefit of the deduction to corporations that show a positive net income. If dividends are subtracted from net business loss in calculating the loss carry forward, the taxpayer loses the full benefit of the dividend deduction in any year in which it suffers a net loss. Such a result was not the legislature's intent.

Furthermore, the interpretation urged by the Department results in a discrimination among taxpayers based on the very criterion the loss carry forward statute was designed to eliminate—the timing of receipt of income. If the dividend deduction may not be carried forward, one taxpayer whose net income in a given year is zero or positive receives the full benefit of sec. 71.04(4), Stats., while another taxpayer who suffers a net loss in that year is deprived of some or all of the benefit of the dividend deduction.[3]

Our conclusion that dividends are not includable in calculating the business loss carry forward is fully compatible with the legislative history and the judicial and administrative interpretation of the business loss carry forward provision.

---

[3] This can be illustrated as follows: Corporation A receives $100,000 in dividend income in year one and shows a net taxable income for that year of zero. It will have received the full benefit of the dividends received deduction, i.e., $100,000 in non-taxed dividend income. Corporation B also received $100,000 in dividend income in year one and suffered a taxable net loss of $50,000 in that year. It will have received only one-half of the benefit of the dividends received deduction in that year, i.e., $50,000 in non-taxed dividend income. If Corporation B is permitted to carry forward its $50,000 loss and use it to offset $50,000 of taxable income in year two, it will have received the full benefit of the dividends received deduction and the same treatment accorded Corporation A. Corporation C received $100,000 in dividend income in year one and suffered a net loss of $100,000. It will receive none of the benefit of the deduction unless it is permitted to carry forward its loss.

Section 71.045, Stats., the predecessor statute to sec. 71.06, was created by sec. 2, chapter 448 Laws of 1931. As originally enacted, the statute did not include the phrase "to the extent not offset by other items of income of the same year." That phrase was inserted by sec. 2, chapter 505 Laws of 1935. The Department argues that the purpose of the amendment of the statute, just four years after the initial enactment, was "to plug a hole." The alleged defect was the pre-1935 statute's failure to include other income not used in calculating the taxpayer's net loss in arriving at the net business loss carry forward. The Department also cites the United States Board of Tax Appeals case of *General Securities Corporation v. Commissioner of Internal Revenue,* 23 B.T.A. 130 (1931) and suggests that in amending the Wisconsin provision, the state was following the federal lead.

An examination of the history of the federal loss carry over provisions provides little support for the contention that Wisconsin was looking to Congress for guidance. The first federal net operating loss provision was passed in sec. 204 (a) of the Revenue Act of 1918.[4] That statute specifically provided that corporate dividends were not deductible in computing the net loss for carry over purposes. Substantially the same section was re-enacted in the 1921, 1924, 1926, 1928, and 1932 Revenue Acts.[5] The National Industrial Recovery Act of 1933 eliminated the

---

[4] Revenue Act of 1918, ch. 18, sec. 204(a), 40 Stat. 1057, 1060 (1918).

[5] Revenue Act of 1921, ch. 136, sec. 204(a), 42 Stat. 227, 231 (1921); Revenue Act of 1924, ch. 234, sec. 206, 43 Stat. 253, 260 (1924); Revenue Act of 1926, ch. 27, sec. 117, 44 Stat. 9, 17 (1926); Revenue Act of 1928, ch. 852, sec. 117, 45 Stat. 791, 825 (1928); Revenue Act of 1932, ch. 209, sec. 117, 47 Stat. 169, 207 (1932).

carry over provision altogether,[6] but it reappeared in the Revenue Act of 1939.[7] In 1954, the law was changed to permit deduction of dividends in computing the loss carry over.[8]

The statute under consideration in the General Securities case was sec. 206 of the Revenue Act of 1926. The pertinent part of that section provided:

"(a) As used in this section the term 'net loss' means the excess of the deductions allowed by section 214 or 234 over the gross income, with the following exceptions and limitations: . . .

"(4) The deduction provided for in paragraph (6) of subdivision (a) of section 234 of amounts received as dividends shall not be allowed; . . .

"(b) If, for any taxable year, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called 'third year') ; the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary."

In *General Securities,* the taxpayer did not dispute the commissioner's interpretation of the statute but contended that the statute as interpreted was unconstitutional. The taxpayer argued that since Congress could not tax dividends directly, it could not tax them indirectly by refusing to allow them as a deduction in computing the net loss carry over. The Board of Tax Appeals rejected the challenge on the grounds that Congress had the authority to tax dividends. "Not only can Congress tax dividend income directly, but it did subject

---

[6] National Industrial Recovery Act, ch. 90, sec. 218(a), 48 Stat. 195, 209 (1933).

[7] Revenue Act of 1939, ch. 247, sec. 122, 53 Stat. 862, 867 (1939).

[8] Internal Revenue Code of 1954, ch. 736, sec. 172, 68A Stat. 3, 63 (1954).

dividends received by both individuals and corporations to the income taxes imposed by the Revenue Acts of 1913 and 1916. . . ." 23 B.T.A. at 133.

We are not persuaded that the purpose of the 1935 amendment adding the phrase "to the extent not offset by other items of income" was to conform the Wisconsin law to its federal counterpart. The federal treatment of dividend income for carry over purposes was governed by a specific statutory provision. Had the legislature intended to bring Wisconsin law governing loss carry forward into line with the federal rule, it would have expressed its intention more clearly, either in 1931 when the first statute was passed or in 1935 when the law was amended.

Neither are we persuaded that the amendment adding the "other items of income" language manifests a legislative commitment to an "economic" loss theory of loss carry forward over a "taxable" loss approach. Under the economic loss theory, a corporate taxpayer is not permitted to carry forward a loss unless it has exhausted all non-taxed income and therefore has suffered a loss in fact. There is no evidence for reading the statute as embracing the economic loss approach apart from the equivocal direction provided by the words themselves. Given the lack of clarity in sec. 71.06, Stats., and the clear and specific directive of sec. 71.04(4), we conclude that sec. 71.06, should not be construed so as to deny corporate taxpayers the full benefit of the dividends received deduction when the legislature has expressed its intention that such dividends not be taxed.

The Department also cites a number of judicial and administrative decisions construing sec. 71.06, Stats., and its predecessor in support of its argument that "other items of income" should be understood to include dividend income. In *Red Star Yeast and Products Co. v.*

*Wisconsin Depart. of Taxation,* 2 W.B.T.A. 17 (1943), the Wisconsin Board of Tax Appeals held that interest on United States bonds fell within the reach of "other items of income" and reduced the loss carry forward. The board stated that:

"The words of limitation added to section 71.045, by the amendment in 1935, evidence convincingly a legislative intent to require a taxpayer to reduce his net business loss by *all* items of income. The argument that because interest derived from obligations of the United States is not taxed in Wisconsin, it is not income to the petitioner is fallacious for the reason that the interest when received still constitutes income; it is true that such interest may not be treated as *taxable income.* However, it is a fact that the interest received from United States bonds is a natural item of income which was reflected as an entry on the petitioner's income sheet for 1938." 2 W.B.T.A. at 20–21.

We note, however, that the tax exempt status of the bond interest at issue in *Red Star Yeast* and the deductibility of the dividends at issue in this case rest on completely different grounds. At the time the *Red Star Yeast* case was decided, there was no provision comparable to sec. 71.04(4), Stats., exempting bond interest from taxation. Wisconsin law treated bond interest as taxable.[9] The exemption from taxation of interest on

---

[9] Section 71.02, Stats. 1937, provides in part:

"**71.02. Definition of term; what income taxable.** (1) The term 'person,' as used in this act, shall mean and include natural persons, fiduciaries and corporations, and the word 'corporation' shall mean and include corporations, joint stock companies, associations or common law trusts organized or conducted for profit unless otherwise expressly stated. The term 'net income' as used in this chapter shall mean 'gross income' less allowable deductions.

"(2) The term 'gross income,' as used in this act, shall include:
. . .

"(b) All dividends derived from stocks and all interest derived from money loaned or invested in notes, mortgages, bonds or other evidence of debt of any kind whatsoever; . . ."

United States bonds was based on the holding of the United States Supreme Court that the states were without power to tax such income. *Northwestern Life Ins. Co. v. Wisconsin,* 275 U.S. 136 (1927).[10]

By contrast, the favorable treatment accorded the dividend income at issue in this case is based on a specific legislative directive. The legislature has determined that dividend income, having been taxed once when earned, should not be taxed a second time when paid out as dividends to a corporation. Our holding that dividends should not be used to reduce the loss carry forward gives effect to that legislative directive.

The Department also cites the Tax Appeals Commission's decision in *Alumatic Corp. of America v. Dept. of Revenue,* 10 W.T.A.C. 93 (1975). In that case the Tax Appeals Commission held that dividends constitute other items of income under sec. 71.06, Stats., and thus reduce the loss carry forward. In support of its conclusion the

[10] In 1959, Congress amended 31 U.S.C. sec. 742 to permit taxation of interest on United States Savings bonds by a non-discriminatory franchise tax imposed on corporations. Act of September 22, 1959, Pub. L. No. 86–346, sec. 105(a), 73 Stat. 622 (1959). Interest on United States bonds is presently both taxable and taxed by the State of Wisconsin. 31 U.S.C. sec. 3124(a)(1) provides:

"Section 3124. *Exemption from taxation.* (a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except—

"(1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; . . ."

Section 71.03(1)(c), Stats. 1981–82, provides:

"71.03. **Gross income and exclusions.** (1) INCLUSIONS. 'Gross income,' as used in determining taxable income of corporations under this chapter, shall include: . . .

"(c) All interest derived from money loaned or invested in notes, mortgages, bonds or other evidence of debt of any kind whatsoever. . . ."

Commission simply cites without explanation the case of *Bowman Dairy Co. v. Tax Comm.*, 240 Wis. 1, 1 N.W.2d 905 (1942). In *Bowman Dairy*, the only disputed issue was the method for calculating the interstate apportionment of income and loss for carry forward purposes. In the course of its opinion, the court stated that the stipulated net loss of the taxpayer for 1934, as reported on the taxpayer's return, was correct "except that income of the taxpayer on bonds held by it in 1934 was not considered in reporting its loss in that year. The taxing authority deducted this sum, $5,568.19, from the net loss reported. This deduction is conceded to have been proper. . . ." 270 Wis. at 3. It was apparently on this basis that the Commission rested its decision that dividends must be used to offset the net loss in *Alumatic*.

We conclude that none of the cases cited to us provides a considered and authoritative response to the question of whether dividend income reduces the loss carry forward under sec. 71.06, Stats. Neither is there such a long standing administrative construction of the statute as to raise a presumption of legislative acquiescence. *Department of Revenue v. Exxon Corp.*, 90 Wis. 2d 700, 732, 281 N.W.2d (1979). The only decision on the issue is the tax commission's unexplained and virtually unsupported decision in *Alumatic*. Finally, we disagree with the Department's position that the decisions construing sec. 71.06, evidence a commitment to an economic as opposed to taxable loss approach to loss carry forward. We do not read the decisions as manifesting such a commitment, nor do we conceive our choice as one which is defined or constrained by those two theories. The determination of what is or is not includable in the calculation of the business loss carry forward should be made on a case-by-case basis according to what will best effectuate the intent of the legislature.

The second and third questions have to do with whether Midland lacked capacity to sue under either sec. 180.-787, Stats., or sec. 227.16.

Section 180.787, stats. 1971, a corporate survival statute, provides in pertinent part:

"**180.787. Survival of remedy after dissolution.** The dissolution of a corporation shall not take away or impair any remedy available to or against such corporation, its directors, officers of shareholders, for any right or claim existing or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within 2 years after the date of such dissolution."

Midland was dissolved in January of 1978. The petition appealing the Department's redetermination of Midland's 1972 taxes was filed with the Commission in January of 1977. The Commission issued its decision and order on November 20, 1980. Midland filed for review by the circuit court under sec. 73.015, Stats., on December 18, 1980.

The Department argues that Midland lost its remedy by failing to bring its action in the circuit court until more than two years after it was dissolved. The Department points out that the jurisdiction of the tax commission over issues arising under the tax laws is concurrent with the circuit court (*Sawejka v. Morgan,* 56 Wis. 2d 70, 78, 201 N.W.2d 528 (1972)) and argues that Midland could, and therefore should, have sued in the circuit court once it became apparent that two years would expire before it had an appealable decision from the tax commission. We disagree.

The broad language of the statute requires that a party initiate "action or other proceeding" within two years in order to preserve its remedy. There is no requirement in those words that corporate rights survive

after dissolution only if they have been asserted in a court action within the two year limit. On the contrary, the phrase "action or other proceeding" clearly shows that there is more than one way of asserting corporate rights to preserve its remedy after dissolution.

The Tax Appeals Commission is an independent tribunal exercising quasi judicial functions. *Sawejka,* 56 Wis. 2d at 76. The fact that its jurisdiction over tax matters is concurrent with the circuit court shows, if anything, that initiating proceedings in the one is as effective in tolling the two year limitation as initiating proceedings in the other. We conclude that the requirements of sec. 180.787, Stats., were satisfied by Midland's filing its petition with the tax commission appealing the Department's redetermination of taxes in January of 1977, a year before it was dissolved.

The Department also argues that Midland was not an "aggrieved person" entitled to seek judicial review under sec. 227.16, Stats.[11] because at the time the circuit court action was commenced it did not exist. In effect, the Department's argument is that Midland is disqualified from bringing suit, not because it is not "aggrieved" but because it is not a "person."

This is the same argument made above. The question of whether or not Midland exists for the purposes of this lawsuit is governed by sec. 180.787, Stats. Having resolved that issue, we do not reconsider it under sec. 227.16.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[11] Section 227.16(1), Stats. 1971, provides in part:

"**227.16 Parties and proceedings for review.** (1) Except as otherwise specifically provided by law, any person aggrieved by a decision specified in s. 227.15 and directly affected thereby shall be entitled to judicial review thereof as provided in this chapter."