James E. NICK, Plaintiff-Respondent,

v.

TOYOTA MOTOR SALES, U.S.A., INC., Defendant-
Appellant.

Court of Appeals

*No. 90–0762. Submitted on briefs November 19, 1990.—Decided January 23, 1991.*

(Also reported in 466 N.W.2d 215.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James E. Bartzen* of *Boardman, Suhr, Curry & Field* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Gene M. Potack* of Menominee, Michigan.

On behalf of the International Automobile Manufacturers, Inc., the cause was submitted on the Amicus Curiae Brief of *Gregory W. Lyons* of *O'Neil, Cannon & Hollman, S.C.* of Milwaukee.

On behalf of the Center for Public Representation, the cause was submitted on the Amicus Curiae Brief of *Lawrence A. Towers* of Milwaukee, and *Robert J. Dreps,* of *LaFollette & Sinykin* of Madison.

On behalf of the Wisconsin Department of Justice, the cause was submitted on the Amicus Curiae Brief of *Donald J. Hanaway,* attorney general, and *William C. Wolford,* assistant attorney general, of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Toyota Motor Sales appeals a judgment in favor of James Nick and against Toyota. Toyota contends that the trial court erred by ruling that Toyota was required to take back the vehicle it sold to Nick and refund the purchase price. Toyota also contends that the trial court erred in its calculation of damages. Because we conclude that Wisconsin's Lemon Law required Toyota to take back the car, we affirm that part of the judgment. Because we also conclude that the damages available for Toyota's wrongful refusal to take back the car and refund the purchase price include the consumer's share of the purchase price actually paid, sales tax, finance charges and the cost of alternate transportation in connection with repair of the vehicle, less a reasonable allowance for use, we reverse in part and remand.

On June 9, 1987, Nick purchased a new Toyota Supra from Rosemurgy Toyota, a dealer in Wausau. The purchase price was $24,907, which Nick financed

through an installment contract loan. Nick experienced problems with the vehicle during his first year of ownership. The vehicle was out of service several times during that year. Toyota admitted that the vehicle was out of service for an aggregate of more than thirty days.

Following Toyota's final return of his vehicle Nick continued to use it but within thirty days made a written demand to Toyota to take back the vehicle and issue a refund. Approximately two months after Toyota refused Nick's demand for a refund, Nick bought a Cadillac Fleetwood and drove the car 19,300 miles prior to the date the court granted Nick judgment on Toyota's liability.

In a pretrial ruling the court held that evidence that Toyota had repaired the vehicle after it had been out of service more than thirty days was irrelevant. The court ruled that under sec. 218.015(1)(h)2, Stats., Toyota had thirty days to repair the vehicle. Because Toyota admitted the car was out of service for an aggregate of more than thirty days, the court ruled that any subsequent repair was immaterial to Nick's right to demand a refund. With that ruling, no disputed factual issues remained to be tried. The court then determined damages as follows:

| Item of Damages | Calculation Column | Amount Allowed | Double Damages |
|---|---|---|---|
| Damages on Toyota Supra | | | |
| Purchase price refund | 24,907.00 | | |
| Allowance for use | −429.15 | 24,477.85 | 48,955.70 |
| Downpayment/trade-in | | 2,040.31 | 4,080.62 |
| Sales tax paid | | 742.01 | 1,484.02 |
| License and title fees | | 44.00 | 88.00 |
| Finance charges, total | 6,948.50 | | |
| Finance charges rebate | −2,398.68 | 4,549.82 | 9,099.64 |

Alternate Transportation

| | | |
|---|---|---|
| Cost of Mileage at 22.5¢ for 19,300 miles | 4,342.50 | 8,685.00 |
| Total Double Damages | | 72,392.98 |
| Prejudgment interest at 5% May 24, 1988 to January 8, 1990 | 594.00 Days | 5,890.61 |
| Total damages with interest | | 78,283.59 |
| Reasonable attorney fees and disbursements | Amount to be determined | |

Section 218.015, Stats., is Wisconsin's Lemon Law. That statute provides that if a new motor vehicle does not conform to an applicable express warranty the nonconformity shall be repaired before expiration of the warranty or one year after delivery of the vehicle, whichever is sooner. Section 218.015(2)(a), Stats. If the nonconformity is not repaired after a reasonable attempt to repair, the manufacturer must accept return of the vehicle and, at the direction of the consumer, either replace the vehicle or refund to the consumer and to the holder of any security interest as their interests may appear "the full purchase price plus any sales tax, finance charge, amount paid by the consumer at the point of sale and collateral costs, less a reasonable allowance for use." Section 218.015(2)(b)1 and 2, Stats. Reasonable attempt to repair means either that the nonconformity is subject to repair four times and the nonconformity continues or that the vehicle "is out of service for an aggregate of at least thirty days because of warranty nonconformities." Section 218.015(1)(h)1 and 2, Stats.

Toyota first contends that because it repaired the vehicle prior to Nick's refund demand, the court erred by holding that Nick was entitled to a refund. Toyota argues that because sec. 218.015(2)(c), Stats., requires

the consumer to offer to transfer title of the vehicle "having the nonconformity" to the manufacturer, the statute does not apply if the vehicle no longer has the nonconformity. We reject such a statutory construction.

The construction of a statute is a question of law that we review without deference to the trial court's determination. *In re R.B.,* 108 Wis. 2d 494, 496, 322 N.W.2d 502, 503 (Ct. App. 1982). The purpose of statutory construction is to ascertain and give effect to the legislature's intent. *In re P.A.K.,* 119 Wis. 2d 871, 878, 350 N.W.2d 677, 681 (1984). In construing a statute, first resort is to the language itself. *Id.* A statute is ambiguous if reasonably well-informed persons could understand it in more than one way. *Id.* at 878–79, 350 N.W.2d at 682.

We conclude that sec. 218.015(2)(c), Stats., is ambiguous. That section requires the consumer to offer title of the vehicle "having the nonconformity" to the manufacturer. A reasonably well-informed person could read that phrase to simply identify the vehicle to which the statute refers. However, it could also be read to require that the vehicle continue to have the nonconformity at the time the consumer offers title to the manufacturer and demands a refund.

When a statute is found to be ambiguous, rules of construction require us to look at the statutory context, subject matter, scope, history and object to be accomplished. *Midland Fin. Corp. v. DOR,* 116 Wis. 2d 40, 46, 341 N.W.2d 397, 400 (1983). A statute should be construed to give effect to its leading idea, and the entire statute should be brought into harmony with the statute's purpose. *State v. Clausen,* 105 Wis. 2d 231, 244, 313 N.W.2d 819, 825 (1982). Remedial statutes should be

liberally construed to suppress the mischief and advance the remedy that the statute intended to afford. *City of Madison v. Hyland, Hall & Co.,* 73 Wis. 2d 364, 373, 243 N.W.2d 422, 427 (1976). We conclude that sec. 218.015(2)(c), Stats., does not require that the car continue to have the nonconformity in order for the consumer to demand a refund when the car has been out of service for an aggregate of at least thirty days.

This construction is consistent with the remedial nature of the statute and consistent with the interpretation of the statute made by this court in *Hartlaub v. Coachmen Industries,* 143 Wis. 2d 791, 422 N.W.2d 869 (Ct. App. 1988). This is a remedial statute designed to rectify the problem a new car buyer has when that new vehicle is a "lemon." To allow the automotive dealer to continue repair efforts beyond the thirty-day period would eviscerate the remedies provided by the statute and allow the manufacturer to effect repairs beyond the time period specifically set forth in the statute. Significantly, subsec. (1)(h)2 only requires that "the motor vehicle is out of service for an aggregate of 30 days because of warranty nonconformities." Unlike subsec. (1)(h)1, which defines "reasonable attempt to repair" as four attempts at repair "and the nonconformity continues," subsec. (1)(h)1 does not contain that additional limiting phrase. Subsection (1)(h)2 thus establishes a brightline rule inconsistent with Toyota's proposed interpretation of the statute. Accordingly, we read "having the nonconformity" in subsec. (2)(c) as a general reference to the vehicle in question, rather than an additional refund prerequisite.

In *Hartlaub,* this court resolved the apparent conflict between subsecs. (1)(h)2 and (2)(b)2, which then stated that if the nonconformity "cannot be repaired" after a reasonable attempt to repair, the manufacturer

must give the consumer a replacement vehicle or a refund. This court held that the repair of repeated nonconformities did not defeat a consumer's right to recover under Wisconsin's Lemon Law where the vehicle has been out of service at least thirty days.

Toyota contends that because sec. 218.015(2)(b)2, Stats., has been amended from "cannot be repaired" to "is not repaired," *Hartlaub* is distinguishable. We disagree. In *Hartlaub,* this court noted that the language of subsections (1)(h)2 and (2)(b)2 made the statute ambiguous and arguably inconsistent. *Hartlaub,* 143 Wis. 2d at 798–99, 422 N.W.2d at 872. This court resolved the conflict by holding that where the vehicle is out of service at least thirty days, it did not matter that the nonconformities were repaired. The minor amendment to subsection (2)(b)2 does not affect either the apparent conflict between that subsection and subsec. (1)(h)2 or the analysis and result in *Hartlaub.* Thus, because the vehicle was out of service for more than thirty days, evidence of subsequent repair was irrelevant and Toyota was required to take back the car and provide the requested refund.

We now examine the damages Nick is entitled to receive under the provisions of sec. 218.015, Stats. Section 218.015(7) provides that a consumer may bring an action to recover any damages caused by a violation of that section. The court "shall award a consumer who prevails in such action twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate." *Id.*

## PURCHASE PRICE

The first issue raised is whether the term "pecuniary loss" includes the purchase price of the vehicle and, if so, how that sum is determined for the purpose of calculating damages. This issue also involves statutory construction, which we review without deference to the trial court's determination. *R.B.*, 108 Wis. 2d at 496, 322 N.W.2d at 503.

Wisconsin's Lemon Law is unambiguous in providing that a consumer entitled to receive a refund is entitled to the full purchase price plus any sales tax, finance charge, amount paid at the time of sale and collateral costs, less a reasonable allowance for use. Section 218.015(2)(b)2.b, Stats. This sum is divided between the consumer and any holder of a perfected security interest, according to their respective interests. *Id.* When the manufacturer violates the law by wrongfully refusing to honor this refund, the consumer suffers pecuniary loss in the amount of the refund he should have received. Nick's pecuniary loss includes that portion of the purchase price he has actually paid, whether by down payment or loan payments. The holder of the perfected security interest receives that portion of the purchase price it has paid, less Nick's payments on the loan's principal. Under the circumstances of this case, the purchaser is entitled to receive his down payment, related costs such as sales taxes which he paid, plus any payments on the principal made by the purchaser to the secured party. The secured party is entitled to the unpaid principal and accumulated interest due on the loan.

## COST OF FINANCING

Any payment made to the holder of a security interest in the consumer's motor vehicle is a pecuniary loss suffered by the consumer for which he is entitled to compensation. The portion of those payments applied to the loan's principal are covered by refund of the consumer's share of the purchase price. The interest paid by the consumer, however, is an additional loss. We recognize that the consumer has had the benefit of the use of the money during the period of the loan. Nonetheless, because of the nonconformity, the consumer did not have the benefit of the unrestricted use of the vehicle for which the costs of financing were applied. Moreover, subsec. (2)(b)2.b specifically provides for the refund of any finance charge. Thus, when Toyota wrongfully refused to provide a refund, Nick's pecuniary loss included the finance charges he paid in addition to that portion of the purchase price he paid. In other words, pecuniary loss includes all money Nick has paid towards ownership of the vehicle by way of down payment, loan payments or otherwise. The loss does not, however, include the amount Nick still owes the secured party.

## ALTERNATE TRANSPORTATION

The trial court allowed damages for the cost of alternate transportation. Nick purchased a Cadillac Fleetwood and drove it 19,300 miles up until the date of trial. The trial court awarded Nick $8,685 for this use, calculated by multiplying the mileage by 22.5¢ per mile and doubling that sum. We do not believe the provision entitling the consumer to recover the cost of alternate transportation is so broad as to encompass a subsequently

obtained automobile and the cost of its operation. In this case, the Toyota was out of operation for a total of thirty-three days. The cost of alternate transportation while the vehicle was out of service is a collateral cost for which the consumer is entitled to compensation under sec. 218.015(1)(a), Stats. That section defines collateral cost as an expense "incurred by a consumer in connection with the repair of a nonconformity, including the costs of obtaining alternate transportation."

The acquisition and use of a new car after the period the initial vehicle was out of service is not compensable. The cost of the use of the Cadillac is not a cost Nick incurred in connection with the Toyota's repair. Nick bought the Cadillac after he demanded a refund. The costs of operating a vehicle at that time are costs Nick would have incurred whether he drove the Cadillac, the Toyota, or a different vehicle and are unrelated to the Toyota's repair.

We conclude that the allowance for alternate transportation is limited to the cost of transportation in connection with the repair of the nonconforming vehicle. In this case, thirty-three days represents the time the nonconforming vehicle was out of service. Reasonable alternate transportation costs during those days are clearly within the definition of pecuniary loss.

Once a manufacturer improperly refuses to accept return of the vehicle and provide a refund, a reasonable period of time must also be alloted the consumer to arrange for another vehicle. Transportation costs incurred during this reasonable period of time may also be regarded as a cost connected with the repair of the nonconforming vehicle. However, once the consumer has obtained another vehicle, or upon the expiration of a reasonable period of time, the cost of alternate transpor-

tation ceases to be related to the repair of the vehicle and becomes the normal cost of transportation incurred by a consumer. The court may conduct a hearing to determine what a reasonable period of time is under the circumstances of this case and what costs were incurred for alternate transportation during this period.

In sum, Nick was entitled to receive all money he paid toward the vehicle together with any collateral costs incurred less a reasonable allowance for use. When Toyota refused to provide this refund, Nick suffered pecuniary loss in the amount of the refund consisting of the down payment together with all payments made to the secured party. In addition, costs of alternate transportation during the thirty-three days the vehicle was unavailable because of repairs and for a reasonable time following Toyota's wrongful refusal to refund are collateral costs recoverable by Nick. Under Wisconsin's Lemon Law, Toyota must pay Nick double this loss, together with costs, disbursements and reasonable attorney fees. Toyota must also pay the holder of the secured interest its unpaid interest in the purchase price and the accumulated interest due on the loan.

### PREJUDGMENT INTEREST

Finally, Toyota contends the trial court erred by awarding prejudgment interest. Toyota argues that damages were never liquidated because the alternate transportation figure was never liquidated. Toyota did not dispute Nick's petition for preverdict interest in the trial court, and we decline to review issues raised for the first time on appeal. *Wirth v. Ehly,* 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1983). However, the interest award is not subject to the doubling provision of sec.

218.015(7), Stats., because the interest is on the pecuniary loss, rather than being part of the loss itself.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded.

CANE, P.J. *(dissenting).* I differ from the majority's determination on damages on two grounds. First, I would conclude the restrictive definition of "collateral costs" found in sec. 218.015(1)(a), Stats., applies only to expenses, including alternative transportation, incurred in connection with the repairs. It does not operate to limit the remedy afforded in subsection (7), which states: "[A] consumer may bring an action to recover for *any damages* caused by a violation of this section. The court shall award a consumer who prevails in such an action twice the amount of *any pecuniary loss* . . .." (Emphasis added.) While collateral costs here may be restricted to the thirty-three-day period when the Toyota was in for repair, the consumer is still entitled under the statute to recover for other pecuniary loss. Such pecuniary loss could, in an operative case, entail the cost of obtaining alternative transportation unconnected to the repair of the nonconformity, but rather because of the manufacturer's refusal to replace the vehicle or give the appropriate refund.

Second, I would not limit these additional pecuniary damages, as does the majority, to "transportation costs incurred during this reasonable period of time" and exempt any damages resulting "once the consumer has obtained another vehicle." A plaintiff has the duty to mitigate damages, and the court may properly inquire into any attempted mitigation prior to awarding damages. Damages recoverable under the statute, however,

should not be defined using this "reasonableness" component.