Mark R. CHURCH and Anna K. Church, Plaintiffs-Appellants,

v.

CHRYSLER CORPORATION and Dodge City of Milwaukee, Inc., Defendants-Respondents.

Court of Appeals

*No. 97–2065. Submitted on briefs July 3, 1998.—Decided August 19, 1998.*

(Also reported in 585 N.W.2d 685.)

On behalf of the plaintiffs-appellants, the cause was submitted on the brief of *Thomas J. Flanagan* of *Jastroch & LaBarge, S.C.* of Waukesha.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Terrence C. Thom* and *Dorothy H. Dey* of *Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.* of Milwaukee.

A non-party brief was filed by *James E. Doyle*, attorney general and *Steven E. Tinker*, assistant attorney general.

Before Snyder, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J. This is a "Lemon Law" case. Mark R. and Anna K. Church appeal from a judgment dismissing their claims against Chrysler Corporation. The Churches purchased a vehicle from Chrysler which proved to be a "lemon." The Churches allege that Chrysler failed to comply with the requirements of the

Lemon Law, § 218.015, STATS., by: (1) failing to provide a refund within thirty days of their offer to transfer title; (2) reducing the refund by the amount of a purchase incentive rebate; and (3) miscalculating the usage allowance amount and the finance charges.

The principal issue on appeal is whether Chrysler complied with the thirty-day time limit for payment of the refund pursuant to § 218.015(2)(c), STATS. Although Chrysler's refund payment to the Churches occurred more than thirty days after the Churches offered to tender title to the vehicle back to Chrysler, the trial court ruled that Chrysler did not violate the statutory time limit because the parties were in disagreement as to the proper amount of the refund. Based on that ruling, the court dismissed the Churches' Lemon Law complaint. We hold that the thirty-day time limit was not suspended or delayed by the parties' disagreement. Because Chrysler's payment to the Churches fell outside the thirty-day period, we reverse the judgment.

Despite our reversal, we agree with the trial court's further ruling that Chrysler was entitled to deduct the Churches' purchase price incentive rebate from the refund amount. Finally, we remand to the trial court for a determination of the amounts of the usage allowance and the finance charges because the summary judgment record reveals material issues of fact as to these items.[1]

---

[1] The Churches additionally argue that Chrysler violated § 218.015, STATS., when it requested that the Churches sign a release form before providing a refund. Since we hold that Chrysler violated the statute by its failure to make payment to the Churches within the thirty-day time limit, we need not answer this issue. See *Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issues need be addressed).

## BACKGROUND

The facts underlying this action were stipulated to by the parties.[2] The Churches purchased a vehicle from Dodge City of Milwaukee, Inc., an authorized dealer for Chrysler, on or about July 27, 1994. Within the first year of the vehicle's delivery, the Churches experienced at least one warranty nonconformity which was not repaired despite a reasonable attempt to repair it. *See* § 218.015(2)(a) & (b), STATS. Chrysler agrees that the vehicle was a "lemon."

On July 20, 1995, Anna Church wrote a letter to Chrysler stating her belief that their vehicle was a "lemon" as defined by § 218.015, STATS. She offered to transfer title of the vehicle to Chrysler in return for "a refund of the full purchase price plus all monies [they] are entitled to as set forth in section 218.015(2)(b) of the Wisconsin Statutes." Chrysler responded to the Churches on August 4, 1995, indicating its agreement to repurchase the vehicle. It set forth a detailed computation of its proposed refund in the amount of $27,832.98 and requested that the Churches call with their acceptance of the refund amount within two business days.

On August 11, 1995, the Churches sent a letter to Chrysler indicating their belief that Chrysler's proposed refund amount was inaccurate. The Churches' letter stated that "[t]he correct refund calculated in accordance with the lemon law" was $30,404.82. The letter additionally notified Chrysler that the Churches expected to receive their refund no later than thirty days from their initial offer on July 20, 1995. On August 15, 1995, Chrysler responded to the Churches

---

[2] We commend the parties, as did the trial court, for this efficient procedure in litigating this case.

advising them that § 218.015, STATS., "only provides for the costs relating to the vehicle at the time of sale" and that they were not entitled to reimbursement for either the rebate they had received at the time of purchase or the cost of accessories. Chrysler nevertheless agreed to include the price of the accessories in the refund. Chrysler notified the Churches that they would be contacted when their checks, totaling a refund of $29,374.51, arrived at the local Chrysler office.

On August 23, 1995, thirty-three days after Anna's original letter offering to transfer the vehicle back to Chrysler and requesting a refund, the Churches filed this action against Chrysler. On September 11, 1995, Chrysler sent a letter to the Churches and enclosed two checks totaling $29,374.51.

Both parties moved for summary judgment. In its bench decision, the trial court ruled that Chrysler had not violated the provisions of § 218.015, STATS., because the parties' negotiations as to the correct amount of the refund had suspended or delayed the running of the thirty-day time limit. Based on that ruling, the trial court dismissed the Churches' complaint. The court also ruled that Chrysler had properly deducted the amount of the purchase incentive rebate from the refund amount. The Churches appeal. The Wisconsin Department of Justice has filed an amicus curiae brief.

## DISCUSSION

██
We review a motion for summary judgment using the same methodology as the trial court. *See M & I First Nat'l Bank v. Episcopal Homes Management, Inc.,* 195 Wis. 2d 485, 496, 536 N.W.2d 175, 182 (Ct. App. 1995); *see also* § 802.08(2), STATS. That methodology is well known, and we will not repeat it here except to

observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See M & I First Nat'l Bank*, 195 Wis. 2d at 496–97, 536 N.W.2d at 182. Although summary judgment presents a question of law which we review de novo, we nevertheless value a trial court's decision on such a question. *See id.* at 497, 536 N.W.2d at 182.

The primary issue in this case is whether § 218.015, STATS., sets forth a strict thirty-day time limit in which a manufacturer must respond to a consumer's offer to transfer the vehicle despite the fact that the parties are negotiating or are in disagreement as to the proper amount of the refund. This presents a question of statutory construction which we decide de novo. *See GTE N., Inc. v. Public Serv. Comm'n*, 176 Wis. 2d 559, 564, 500 N.W.2d 284, 286 (1993). The primary goal of statutory construction is to ascertain the legislature's intent. *See Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 978, 542 N.W.2d 148, 149 (1996). In doing so, we examine the language of the statute and its scope, history, context, subject matter and purpose. *See id.*

Section 218.015, STATS., the Lemon Law, is a "remedial statute designed to rectify the problem a new car buyer has when that new vehicle is a 'lemon.' " *Nick v. Toyota Motor Sales*, 160 Wis. 2d 373, 381, 466 N.W.2d 215, 218 (Ct. App. 1991). The law provides that if a new motor vehicle does not conform to an applicable express warranty and the consumer reports the nonconformity and makes the vehicle available for repair before the expiration of the warranty or one year after delivery of the vehicle, the nonconformity shall be

repaired. *See* § 218.015(2). If the nonconformity is not repaired, the consumer's remedies pursuant to § 218.015(2) are, in part, as follows:

(b) 1. If after a reasonable attempt to repair the nonconformity is not repaired, the manufacturer shall carry out the requirement under subd. 2. or 3., whichever is appropriate.

2. At the direction of a consumer . . . do one of the following:

. . . .

b. Accept return of the motor vehicle and refund to the consumer and to any holder of a perfected security interest in the consumer's motor vehicle, as their interest may appear, the full purchase price plus any sales tax, finance charge, amount paid by the consumer at the point of sale and collateral costs, less a reasonable allowance for use. . . .

. . . .

(c) To receive a comparable new motor vehicle or a refund due[,] . . . a consumer . . . shall offer to the manufacturer of the motor vehicle having the nonconformity to transfer title of that motor vehicle to that manufacturer. *No later than 30 days after that offer, the manufacturer shall provide the consumer with the comparable new motor vehicle or refund.* . . . [Emphasis added.]

If a consumer brings an action following a manufacturer's violation of the statute, "[t]he court shall award a consumer who prevails in such an action twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate." Section 218.015(7).

The Churches argue that Chrysler violated the statute because it did not send them the refund checks

until September 11, 1995, more than thirty days after the Churches' July 20 offer to transfer title. The amicus brief agrees. Chrysler argues that the Churches' subsequent letter of August 11 in which the Churches claimed that Chrysler had miscalculated the refund removed the refund process from the Lemon Law time requirements. Alternatively, Chrysler argues that the process of negotiating the appropriate amount which began on August 11 "restarted the 30-day time limit." We are unpersuaded.

■

The Wisconsin Lemon Law was enacted to deal with an increasing number of warranty disputes between manufacturers and consumers. *See Hughes,* 197 Wis. 2d at 979, 542 N.W.2d at 150. It was "created to be a self-enforcing consumer law that provides 'important rights to motor vehicle owners.' " *Id.* at 981–82, 542 N.W.2d at 151 (quoting Memorandum from Bronson C. LaFollette, Attorney General, to Members of the Legislature, Re: AB 434, Auto "Lemon Law" Changes, Oct. 14, 1985, Wis. Act. 205). One purpose of the law was to "provide an incentive for a manufacturer to put the purchaser of a new car back to the position the purchaser thought he or she was in at the time they bought the car." *Id.* at 976, 542 N.W.2d at 149. It is clear from the thirty-day time limit set forth under § 218.015(2)(c), STATS., that an additional purpose of the statute was to ensure that the manufacturer would do so in a timely manner.

We reject Chrysler's contentions that the Churches' attempts to negotiate a greater refund amount removed the process from the Lemon Law or suspended or delayed the running of the thirty-day clock. Although the Churches' letter undoubtedly complicated the process, the language of § 218.015, STATS.,

clearly requires that the manufacturer issue a refund within thirty days of the consumer's offer to transfer title. Therefore, once the consumer makes an offer to transfer title, the burden is on the manufacturer to comply with the thirty-day requirement regardless of whether items or amounts are in dispute. To hold otherwise would undo the purpose of the statute.

When the parties cannot agree on the correct amount of the refund, we interpret the Lemon Law to give the manufacturer two options: (1) pay the amount demanded by the purchaser within the thirty-day period; or (2) pay the amount which the manufacturer deems appropriate within the thirty-day period. If the manufacturer pays the amount demanded by the consumer, the matter is obviously concluded. If the manufacturer pays the amount it deems appropriate, the consumer may take the matter to court. There the issue will not be whether payment has been made within thirty days, but rather whether the amount of the refund was correct. If the fact finder determines that the refund amount was correct, the manufacturer wins and suffers no penalties under the Lemon Law. If the fact finder determines that the refund amount was insufficient, the manufacturer loses and suffers the penalties imposed by the statute. *See* § 218.015(7), Stats.[3]

██

We appreciate that the rigidity of the thirty-day requirement places the manufacturer in a difficult position with attendant risk. However, the Lemon Law is a policy-driven statute aimed at the long-standing problems resulting from the unequal playing field

---

[3] Actually, the manufacturer has a third option—pay nothing. That obviously would constitute a violation of the "Lemon Law" if a refund is owed.

between consumers and manufacturers. *See Hughes*, 197 Wis. 2d at 983–84, 542 N.W.2d at 151–52. If its requirements prove to be too rigid and its results unreasonably harsh, it is a problem for the legislature, not this court, to resolve. *See Georgina G. v. Terry M.*, 184 Wis. 2d 492, 520, 516 N.W.2d 678, 687 (1994) (Geske J., concurring) ("We can only interpret the law, not rewrite it.").

Having concluded that Chrysler violated the Lemon Law by failing to make payment to the Churches within the thirty-day period, we turn to the additional issues which bear upon the amount of the Churches' damages. First, the Churches argue that Chrysler failed to refund the full purchase price of the vehicle when it reduced the refund by $400, the amount of a cash rebate received by the Churches after they purchased the vehicle. The Churches argue that the Lemon Law does not provide for such a reduction, noting that the statute speaks about the "full purchase price." *See* § 218.015(2), STATS.

However, looking to the purpose of the Lemon Law, we conclude that Chrysler's deduction of the rebate from the prerebate purchase price was appropriate. The purpose of the Lemon Law is to return the purchaser of a lemon to the position he or she was in at the time the vehicle was purchased. *See Hughes*, 197 Wis. 2d at 976, 542 N.W.2d at 149. The statute allows the consumer to recover twice the amount of the "pecuniary loss" in addition to other expenses. *See* § 218.015(7), STATS. When the manufacturer violates the law by wrongfully refusing to honor this refund, the consumer suffers pecuniary loss in the amount of the refund he or she should have received. *See Nick*, 160 Wis. 2d at 383, 466 N.W.2d at 219. A consumer's pecuniary loss includes that portion of the purchase price he

or she has actually paid. *See id*. We conclude, as did the trial court, that the goal of the Lemon Law is not served by refunding more than the amount which the consumer actually paid for the vehicle. Therefore, when computing the Churches' damages on remand, the trial court shall adhere to its ruling that Chrysler properly deducted the amount of rebate from the purchase price of the vehicle.

Finally, the Churches dispute Chrysler's computation of the usage allowance and finance charges. *See* § 218.015(2)(b)2.b, STATS. The trial court did not reach these issues since it had ruled that Chrysler had not violated the thirty-day time limit. Our review of the summary judgment record reflects a sharp dispute of material fact as to the proper amount of these items.[4] These matters must be tried on remand.

---

[4] Section 218.015(2)(b)2.b, STATS., allows the manufacturer to reduce the refund by a "reasonable use allowance" which is calculated in part by using the "number of miles the motor vehicle was driven before the consumer first reported the nonconformity to the motor vehicle dealer." The parties dispute whether the Churches' first reported problem was related to the nonconformity. According to the Churches, they first reported a problem after driving the vehicle 220 miles. However, Chrysler argues that the first reported problem *relating to the nonconformity* occurred after 1252 miles. Chrysler argues that this issue was not raised before the trial court and is therefore waived. However, the issue was raised in the Churches' summary judgment brief and it is evident from the motion hearing transcript that the mileage dispute was known to both parties.

With respect to the finance charges, the Churches contend that Chrysler owes them $553.29. Chrysler's August 15 letter reflects a refund of $282.30 for the finance charges stating that "[t]he only statement we have with regard to the interest lists year to date interest in the amount of $282.30. We will be willing to pay any additional interest on your loan provided that a

In conclusion, we hold that Chrysler violated the Lemon Law by failing to make payment to the Churches within the thirty-day time period. We therefore reverse the judgment dismissing the Churches' complaint. We remand for a determination of the Churches' damages pursuant to § 218.015(7), STATS. In making that determination, the trial court shall adhere to its prior ruling that Chrysler properly deducted the amount of the rebate from the purchase price of the vehicle. In addition, the court shall resolve the material issues of fact as to the finance charges and the usage allowance.

*By the Court.*—Judgment reversed and cause remanded.

statement can be furnished by your lender which indicates additional interest paid prior to 1995." Whether the Churches incurred the additional interest charges is a question of fact to be resolved by the trial court.