Brody and wife, Respondents, v. Long and wife, Appellants.

*March 8—April 4, 1961.*

For the appellants there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *Walter F. Kaye.*

For the respondents there was a brief by *Clarence V. Olson* of Ashland, and *Norlin & Spears* of Washburn, and oral argument by *Mr. Olson* and *Mr. Walter T. Norlin.*

CURRIE, J. The first order appealed from is that denying the application of persons not parties to the action to intervene. Such order is not an appealable order in so far as the defendants are concerned. Although with respect to the moving parties it is "a final order affecting a substantial right made in special proceedings" within the meaning of sec. 274.33 (2), Stats., this is not true as to the defendants. *State v. McDonald Lumber Co.* (1960), 9 Wis. (2d) 206, 100 N. W. (2d) 701. This is because a party to the action, who is aggrieved by such an order, can secure a review thereof by appealing from the final judgment. However, we entertain a strong doubt whether the defendants are parties "aggrieved" by such order under the provisions of sec. 274.10,[1] inasmuch as the movants are making no claim to the disputed area which is the subject matter of the instant action.

Because such order denying the motion to intervene is not appealable by the defendants, the appeal therefrom must be dismissed.

We now turn to the merits of the controversy as raised by the motions for summary judgment, and the appeals from the two orders denying such motions. In order for the plaintiffs to prevail in this action to quiet title on the merits

---

[1] Sec. 274.10, Stats., provides in part as follows:

"Any judgment within sec. 274.09 or any order defined in sec. 274.33 may be reviewed before the supreme court upon an appeal by any party aggrieved."

they must do so upon the strength of their own title and not the weakness of the defendants' title.[2]

The plaintiffs' title originates in the two tax deeds of September 18, 1936, and September 21, 1938. A tax deed is an independent source of title. *Doherty v. Rice* (1942), 240 Wis. 389, 398, 3 N. W. (2d) 734. Therefore, it is unnecessary to go further back than the assessments which gave rise to the tax sale certificates upon which such two tax deeds issued. Such assessments were those of the tax rolls for the years 1931 and 1932. On both of such tax rolls the pertinent description of the parcel assessed was stated as follows:

"NW¼ SE¼ Lot 6."

In the 1932 and 1933 tax sale certificates issued to the county based upon such assessments the description was stated to be:

"Lot 6 NW SE"

which is the same description inserted in the two tax deeds. However, when the county conveyed to Roberts, and he and his wife conveyed to the plaintiffs, the word "or" was inserted between "Lot 6" and the description which followed, to wit: "NW SE" in the first of such two deeds, and "the Northwest Quarter of the Southeast Quarter" in the deed to the plaintiffs.

The plaintiffs contend that the western boundary of lot 6 of section 21 extends to the east shore of Payment lake

---

[2] *Kidder v. Pueschner* (1933), 211 Wis. 19, 22, 247 N. W. 315; *Ellis v. Chestnut* (Ky. 1956), 289 S. W. (2d) 740; 44 Am. Jur., Quieting Title, p. 69, sec. 83; 74 C. J. S., Quieting Title, p. 41, sec. 17b. This same rule prevails in actions of ejectment. *Stone Bank Improvement Co. v. Vollriede* (1960), 11 Wis. (2d) 440, 444, 105 N. W. (2d) 789.

while the defendants' position is that the north and south quarter section line marks such western boundary of lot 6. The plaintiffs ground their contention upon the premise that location of such western boundary of lot 6 is dependent upon the federal government's intent in making the original grant of lot 6,[3] and that such intent was that lot 6 have a water boundary. The defendants on the other hand argue that the right "to search for water" does not extend to the point of crossing a quarter section line.[4]

The foregoing argument is beside the point if the tax title under which the plaintiffs claim is held not to extend to any land located west of the quarter section line. This makes it necessary to construe the afore-quoted descriptions in the tax rolls, tax sale certificates, and tax deeds.

We start with the ambiguous descriptions of the parcel now owned by the plaintiffs in the 1931 and 1932 assessments appearing on the tax rolls. These were "NW¼ SE¼ Lot 6." However, such ambiguity was resolved by the county in the manner by which this same parcel was described in the two subsequent tax sale certificates, the two tax deeds, and the quitclaim deed to Roberts. By describing such parcel in the tax sale certificates and the tax deed as "Lot 6 NW SE," the inference to be drawn therefrom is that lot 6 is

[3] That such intent is controlling was held by *Baackes v. Blair* (1936), 223 Wis. 83, 86, 269 N. W. 650. In that case it was held that where a lake is erroneously meandered by a government survey, an owner whose land is shown on the survey as touching water is entitled to extend his boundary until it actually reaches the lake, even though in doing so he must cross a section one-eighth line.

[4] In *Blatchford v. Voss* (1929), 197 Wis. 461, 469, 219 N. W. 100, 222 N. W. 804, it was held that the necessity of the crossing of a governmental subdivision line is not to be an absolute and controlling feature in determining the intent of the government in making the original grant in a case of this kind, but is only one of several factors to be considered. This had the effect of overruling several earlier cases. See also 11 C. J. S., Boundaries, pp. 574, 575, sec. 30; and 1 Patton, Titles (2d ed.), p. 302, sec. 117.

located in the northwest quarter of the southeast quarter of the section. Any lingering doubt as to this is removed by the description employed by the county when it conveyed by quitclaim deed to Roberts, *i.e.,* "Lot 6 or NW SE."

The word "or" has various meanings depending upon the context in which used. Webster's New International Dictionary (2d ed., unabridged), defines "or" as follows:

"A co-ordinating particle that marks an alternative; as, you may read *or* may write,—that is, you may do one of the things at your pleasure, but not both. It often connects a series of words or propositions, presenting a choice of either; as, he may study law *or* medicine *or* he may go into trade. Specific uses are to indicate: a. Substitution; as, use olive oil *or* any light oil. b. *Explanation;* as, transepts *or* cross aisles. c. Correction; as, ropes, *or* nautically, sheets. d. Approximation; as, two *or* three days. e. Succession by turns; as, one *or* other of them sat by him all night. f. Consequence; as, pay *or* I'll sue." (Emphasis supplied.)

Of the above-listed six possible uses we are of the opinion that only one is appropriate here, in view of the context of the instant description, and that is the second one, "b. *Explanation.*" As so used the word *"being"* could well be substituted for the word "or."

In *State v. Boncher* (1884), 59 Wis. 477, 478, 18 N. W. 335, an amended criminal complaint charged the defendant with illegally selling "intoxicating or malt liquor." An attack was made on the sufficiency of such allegation on the ground that it was stated in the disjunctive. The court in answer thereto declared (p. 480):

"The answer to the first objection is that the word 'or' is manifestly there used to explain the kind of intoxicating liquors sold, to wit, malt as distinguished from ardent or spirituous liquors. Under the amended complaint it would have been error to allow testimony of a sale of any other than malt liquors."

This court in the later case of *Menominee River Boom Co. v. Augustus Spies L. & C. Co.* (1911), 147 Wis. 559, 569, 132 N. W. 1118, was called upon to construe the word "or" in the statutory phrase "tolls or boom charges," and stated:

"'Or' is usually disjunctive; occasionally, to avoid absurdity, it is construed as a conjunctive and equivalent to 'and,' but it also is used in the sense of 'alias,' as in the phrase 'a violin or fiddle.' Standard Dict. It is in the latter sense that it is used here."

Cases from other jurisdictions holding that the context in which the word "or" was used required that it be construed to be equivalent to the word "being" are *Everitt v. LaSpeyre* (1943), 195 Ga. 377, 383, 24 S. E. (2d) 381, 384, 385, and *People v. Third Nat. Bank* (1899), 159 N. Y. 382, 388, 54 N. E. 35, 37.

In view of the foregoing authorities we construe the description appearing in the quitclaim deed from the county to Roberts as the equivalent of "Lot 6 *being* the NW¼ of the SE¼" of section 21. As the plaintiffs trace their title through the county, they are concluded by the construction which the county itself has placed upon the ambiguous descriptions in the assessments on the 1931 and 1932 tax rolls.

In order to reach any other construction of the tax deed and the subsequent quitclaim deed to Roberts, we would have to treat "NW SE" as surplusage not limiting the meaning to be placed on "Lot 6." However, in construing tax deeds no part of the description is to be rejected as surplusage. *Orton v. Noonan* (1868), 23 Wis. 102, 104, and *Collins v. Storm* (1888), 75 Iowa 36, 39 N. W. 161. The plaintiffs urge that sec. 70.25, Stats.,[5] has destroyed *Orton v.*

---

[5] Sec. 70.25, Stats., provides in part as follows:
"In all assessments and tax rolls, and in all advertisements, certificates, papers, conveyances, or proceedings for the assessment

*Noonan, supra,* as a precedent. However, we do not deem that this is so with respect to the narrow point for which we have here cited it. Furthermore, a grant of land by a public body is to be construed most strongly against the grantee. 6 Thompson, Real Property (perm. ed.), p. 571, sec. 3365.

Certain facts not heretofore mentioned, which were brought out in the affidavits considered by the trial court in passing on the motions for summary judgment, have some slight probative materiality with respect to intent of the assessor and county in employing the particular descriptions herein construed.

Among such additional facts are the tax rolls of the town of Mercer, covering assessments made in the aforesaid section 21 for the years 1931, 1932, and 1947. In the 1931 and 1932 rolls no assessments were shown for any land lying in the northeast quarter of the southwest quarter of such section. However, in 1947, assessments were made against lands in such northeast quarter of the southwest quarter, such lands being described as located in lot 7.

Other additional facts are: On October 30, 1945, the Iron county land committee submitted a recommended resolution to the county board that the county issue a quitclaim deed to John Roberts (plaintiffs' grantor) for "Lot 6 or NW SE" of section 21 for $150, and on the same day the

and collection of taxes, and proceedings founded thereon, as well heretofore as hereafter, any descriptions of land which shall indicate the land intended with ordinary and reasonable certainty and which would be sufficient between grantor and grantee in an ordinary conveyance shall be sufficient; nor shall any description of land according to the United States survey be deemed insufficient by reason of the omission of the word quarter or the figures or signs representing it in connection with the words or initial letters indicating any legal subdivision of lands according to government survey."

county board adopted such resolution. Prior to submitting such resolution the land committee had obtained a written "Land and Timber Report" from one Hannula covering "NW SE or Lot 6" of section 21 containing a diagram of such property. Such diagram showed it to be a square quarter section with no lake boundary on its west side. The outline of a "small lake" is shown thereon lying within the area that corresponds to Wallace lake, which is shown on the diagram printed herewith. This report states the "land value" to be $100 and the "frontage value" to be $75. The words "frontage value" obviously refer to the frontage on Wallace lake as no other water frontage is shown on such diagram constituting part of the report.

We do not consider that the foregoing additional facts are of controlling significance. This is because of our conclusion that the ambiguity in the description in the original tax assessments has been resolved by the subsequently employed descriptions in the tax sale certificates, the tax deeds, and the quitclaim deed from the county to Roberts.

The plaintiffs have cited the case of *Sheppard v. Wilmott* (1891), 79 Wis. 15, 47 N. W. 1054, in support of their contention that the tax deed from the county embraces the land lying between the west line of the northwest quarter of the southeast quarter of section 21 and the shore of Payment lake. This argument is grounded upon the assumption that lot 6 embraces such additional land. We have carefully avoided passing on the issue of whether lot 6 does extend to such lake shore, as we have found it unnecessary for the purpose of this appeal to do so. In the *Sheppard Case* the government lot bordered on a lake which embraced more than a quarter section within its area. The original government grant mistakenly described the parcel conveyed as being only the quarter section lying within the boundaries of

such lot *without mention of the lot number.* This court held that under federal law the government could not convey less than the whole lot and interpreted the original grant as so doing. The decision of the case therefore turned on a narrow point of federal law, and possesses no efficacy as a guiding precedent in the instant appeal.

The plaintiffs also contend that they have obtained title to the disputed area by ten years' adverse possession under color of title, and cite sec. 330.06, Stats. Their cottage is located on the shore of Wallace lake and there has been no actual occupancy by them of the land constituting the parcel in dispute. Any color of title of theirs is necessarily grounded on the quitclaim deed which they received from Roberts and wife. The land conveyed by such deed is "Government Lot Six (6) or the Northwest Quarter of the Southeast Quarter" of section 21. Inasmuch as we have previously construed this description to be the equivalent of describing the northwest quarter of the southeast quarter, the plaintiffs are without any color of title to any land which lies to the west of the west line of such quarter section.

*By the Court.*—The appeal from the order dated January 28, 1960, is dismissed; the other two orders appealed from are reversed, and the cause remanded with directions to enter summary judgment dismissing the plaintiffs' complaint. The defendants shall be entitled to tax costs on this appeal except that such costs shall not include the cost of printing 13 pages of their brief and appendix.