Leonard CHMILL and Ruth Chmill, Plaintiffs-
Respondents,

v.

FRIENDLY FORD-MERCURY OF JANESVILLE,
INC., and Ford Motor Company, Defendants-
Appellants.

Court of Appeals

*No. 86–1975. Submitted on briefs March 10, 1988.—Decided
April 28, 1988.*

(Also reported in 424 N.W.2d 747.)

797

For the defendants-appellants the cause was submitted on the briefs of *Maurice J. McSweeney* and *Brian W. McGrath* and *Foley & Lardner,* of Milwau-

kee; and *James E. Bartzen* and *Boardman, Suhr, Curry & Field,* of Madison.

For the plaintiffs-respondents the cause was submitted on the brief of *Louis X. Mineau* and *Bolgrien, Ruth, Rentz, Mineau & Koepke, S.C.,* of Beloit.

Brief of amicus curiae was filed by *Donald J. Hanaway,* attorney general, and *William C. Wolford,* assistant attorney general, on behalf of the *Department of Justice State of Wisconsin.*

Before Gartzke, P.J., Eich and Sundby, JJ.

SUNDBY, J. This case requires an interpretation of sec. 218.015, Stats. (1983–84), Wisconsin's Lemon Law.[1] Friendly Ford-Mercury of Janesville, Inc., and Ford Motor Company appeal a judgment under the law requiring them to replace the Chmills' Ford Tempo with a comparable new motor vehicle.[2] We affirm.

---

[1]Section 218.015, Stats. (1983–84), was amended by 1985 Wis. Act 205. The 1983–84 version is applicable here. Therefore all references to sec. 218.015 will be to the 1983–84 statute.

[2]Section 218.015(2), Stats., provides:

(a) If a new motor vehicle does not conform to an applicable express warranty and the consumer reports the nonconformity to the manufacturer or any of its authorized motor vehicle dealers and makes the motor vehicle available for repair before the expiration of the warranty or one year after first delivery of the motor vehicle to a consumer, whichever is sooner, the nonconformity shall be repaired.

(b) If after a reasonable attempt to repair the nonconformity cannot be repaired, the manufacturer shall, at the direction of the consumer, either replace the motor vehicle with a comparable new motor vehicle or accept return of the motor vehicle and refund the full purchase price plus any amounts paid by the consumer at the point of sale and all collateral costs associated with the repair of the nonconformity less a reasonable allowance

## I.

## BACKGROUND OF THE CASE

On November 26, 1983, the Chmills purchased a demonstrator 1984 Ford Tempo, from Friendly Ford-Mercury of Janesville, Inc. Friendly Ford gave the Chmills a new-car warranty which expired May 4, 1984 when the Chmills had driven the vehicle 12,000 miles.

The trial court found that between the date of purchase and April 2, 1984, the Chmills on at least five occasions had reported a "pulling" problem to Friendly Ford and had left the vehicle with it to be repaired. In December 1984, the Chmills received a recall notice from Ford concerning a rear wheel alignment problem. On December 10, 1984 the Chmills presented the vehicle to Friendly Ford for repair pursuant to the recall notice. The rear wheels were realigned to attempt to correct the alignment and tire wear problems.

On December 8, 1984 the Chmills sought relief from the Ford Consumer Appeals Board. Friendly Ford's service manager responded that recent road tests had shown that the allegation of a "pulling" problem was unfounded. However, he agreed that a tie rod was defective and it was replaced. According to the Chmills the pulling problem continued. They commenced this action July 15, 1985.[3] The defendants

---

for use to the consumer and to any holder of a perfected security interest in the motor vehicle, as their interests may appear.

[3]The Chmills alleged five causes of action: (1) violation of the federal Magnuson-Moss Warranty Act, 15 U.S.C. sec. 2301 et seq. (1982); (2) claim under sec. 218.015, Stats; (3) misrepresentation; (4) breach of warranty of fitness for a particular purpose; (5) breach of

established that as of the final day of trial, June 27, 1986, the Chmills had driven the vehicle 78,000 miles.

## II.

## THE ISSUES

(1) Did the "pulling" condition of the Chmill vehicle constitute a "nonconformity" within the meaning of sec. 218.015(1)(f), Stats?

(2) Did the Chmills make a reasonable attempt to have the vehicle repaired within the meaning of sec. 218.015(1)(h), Stats?

(3) Is Ford entitled to a reasonable allowance for the Chmills' use of the vehicle?

## III.

## STANDARD OF REVIEW

The trial court made a finding of fact and a conclusion of law that the pulling problem constituted a nonconformity which substantially impaired the use, value and safety of the vehicle.

"Nonconformity" is defined in sec. 218.015(1)(f), Stats., which provides:

> "Nonconformity" means a condition or defect which substantially impairs the use, value or safety of a motor vehicle, and is covered by an express warranty applicable to the motor vehicle, but does not include a condition or defect which is the result of abuse, neglect or unauthorized modification or alteration of the motor vehicle by a consumer.

warranty of merchantability. Only their claim under sec. 218.015 is involved on this appeal.

■
The parties differ as to our standard of review of the trial court's finding of substantial impairment. The defendants contend that once the trial court found the "basic" facts, the determination of whether the pulling condition "substantially impair[ed]" the use, value or safety of the vehicle is a question of law which we may decide without deference to the trial court. The Chmills argue that the question of substantial impairment is "ultimately" one of fact. However, they acknowledge that whether the facts fulfill a legal standard is a question of law. *Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983).

In *Erling v. Homera, Inc.,* 298 N.W.2d 478, 481–82 (N.D. 1980), the North Dakota Supreme Court rejected the conclusion of the Minnesota Supreme Court, *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349, 354 (Minn. 1977), that substantial impairment is a conclusion of law. The North Dakota court concluded that the better view is that substantial impairment is a question for the trier of fact. *Erling,* 298 N.W.2d at 481. The court cited other courts which have reached the same result: *Graulich Caterer, Inc. v. Hans Holterbosch, Inc.,* 243 A.2d 253, 262 (N.J. Super. Ct. App. Div. 1968); *McGilbray v. Scholfield Winnebago, Inc.,* 561 P.2d 832, 837 (Kan. 1977); *Dehahn v. Innes,* 356 A.2d 711, 720 (Me. 1976); *Countryside Mobile Homes, Etc. v. Schade,* 281 N.W.2d 756, 759 (Neb. 1979); *Schumaker v. Ivers,* 238 N.W.2d 284, 287 (S.D. 1976); *Murray v. Holiday Rambler, Inc.,* 83 Wis. 2d 406, 421–22, 265 N.W.2d 513, 521 (1978).[4]

---

[4]*Holiday Rambler* was an action under the Uniform Commercial Code to recover on a motorhome warranty. The jury found that nonconformities substantially impaired the value of the

██ We decline to hold that substantial impairment under sec. 218.015(1)(f), Stats., is a question of fact. Whether the Chmills' vehicle was subject to a nonconformity which substantially impaired its use, value or safety required factual findings which are intertwined with a legal conclusion: whether the facts fulfill the legal standard of substantial impairment. Where, as here, the court is the trier of the facts, we apply the clearly erroneous test, sec. 805.17(2), Stats., to its findings as to the facts and give weight to the trial court's legal conclusion, although its determination is not controlling. *Wassenaar*, 111 Wis. 2d at 525, 331 N.W.2d at 361. This standard of review is appropriate because the determination that something is "substantial" requires a value judgment heavily dependent upon interpretation and analysis of underlying facts. *In re Marriage of Harris v. Harris*, 141 Wis. 2d 569, 574–75, 415 N.W.2d 586, 589 (Ct. App. 1987).

## IV.

### SUBSTANTIAL IMPAIRMENT

The defendants argue that because the Chmills drove the vehicle 78,000 miles, it does not have a substantial impairment as a matter of law. They rely on cases decided under the Uniform Commercial Code: *Gasque v. Mooers Motor Car Co., Inc.*, 313 S.E.2d 384 (Va. 1984); *Koperski v. Husker Dodge, Inc.*, 302 N.W.2d

---

motorhome. *Id.*, 83 Wis. 2d at 427, 265 N.W.2d at 524. The court did not consider whether the issue of substantial impairment was properly submitted to the jury. Accordingly, we cannot assign Wisconsin to that group of courts which have held that the question of substantial impairment is a question of fact.

655 (Neb. 1981); *Taterka v. Ford Motor Co.,* 86 Wis. 2d 140, 271 N.W.2d 653 (1978).

Cases decided under the U.C.C. are inapposite because nonconformity thereunder is determined solely under a value standard. Uniform Commercial Code sec. 2–608(1) (sec. 402.608(1), Stats.) permits a buyer to revoke his acceptance of a commercial unit whose "nonconformity substantially impairs its value to him." This is a far different standard from the sec. 218.015(1)(f), Stats., standard which defines a nonconformity in terms of use and safety as well as value.

In *Gasque,* 313 S.E.2d at 389, *Koperski,* 302 N.W.2d at 662, and *Taterka,* 86 Wis. 2d at 147, 271 N.W.2d at 655, the fact that the vehicle had substantially fulfilled its primary purpose—simple transportation—was held to satisfy the requirements of the code. However, that a vehicle has served its primary purpose of providing "simple transportation" does not satisfy the use, value and safety standard of sec. 218.015(1)(f), Stats. We therefore reject the defendant's argument that because the Chmills drove the defective vehicle for 78,000 miles, there was, as a matter of law, no substantial impairment within the meaning of sec. 218.015(1)(f). Each case must be examined on its facts under the standard of sec. 218.015(1)(f).

■

The trial court found that, on her way home from the dealership, Mrs. Chmill discovered that the vehicle pulled to the left. The pulling problem continued and the vehicle was returned to Friendly Ford in December, 1983 for repair. Thereafter, through April of 1984 and no less than once each month, Mrs. Chmill returned the vehicle to Friendly Ford for repair of the pulling problem. The Chmills testified that Friendly

Ford's service manager told them the vehicle should be replaced or repurchased since it was defective and could not be repaired. This testimony was unchallenged. An experienced car salesman and buyer for a Buick-Pontiac dealership testified that because of the pulling defect, the value of the vehicle was substantially less than the price paid by the Chmills. From these facts and testimony the trial court found that the pulling problem substantially impaired the use, value and safety of the vehicle. That finding is not clearly erroneous. We affirm the trial court's determination that the facts in this case fulfill the legal standard of "substantial impairment."

## V.

## ATTEMPTS TO REPAIR

We consider next the defendants' claim that there were not four attempts to repair the vehicle as required by sec. 218.015(1)(h)1, Stats.

To be entitled to recovery under sec. 218.015(2)(b), Stats., a consumer must establish that "after a reasonable attempt to repair the nonconformity [it] cannot be repaired." Section 218.015(1)(h) provides in part:

> "Reasonable attempt to repair" means any of the following occurring within the term of an express warranty applicable to a new motor vehicle or within one year after first delivery of the motor vehicle to a consumer, whichever is sooner:
> 1. The same nonconformity with the warranty is subject to repair by the manufacturer or any of its authorized motor vehicle dealers at least 4 times and the nonconformity continues.

The defendants "vigorously dispute" the trial court's finding of fact that between the date of purchase of the vehicle and April 2, 1984, Mrs. Chmill had on at least five occasions left the vehicle with Friendly Ford to correct the pulling defect. However, they accept that finding for decisionmaking purposes. They suggest that a vehicle is not "subject to repair" unless the dealer has attempted to repair it. The defendants argue that the record shows that Friendly Ford did not attempt to repair the vehicle four times within the warranty period because the defective condition could not be verified by it.

■

The construction of the statute urged by the defendants would lead to an unreasonable result. If an acknowledged defect cannot be diagnosed by the service agency no matter how many times the consumer presents the vehicle for repair, the consumer is without recourse. Remedial statutes should be construed to suppress the mischief and advance the remedy which the statute intended to afford. *Madison v. Hyland, Hall & Co.,* 73 Wis. 2d 364, 373, 243 N.W.2d 422, 427 (1976). We reject the defendant's hypertechnical construction of the statute as unreasonable. *State v. Zielke,* 137 Wis. 2d 39, 51, 403 N.W.2d 427, 432 (1987). We conclude that the Chmills complied with the statute when on at least four occasions within the warranty period they presented the vehicle to Friendly Ford to be repaired.

## VI.

## ALLOWANCE FOR USE

The defendants contend they are entitled to a reasonable offset for the use which the Chmills made

of the vehicle. Section 218.015(2)(b), Stats., gives to the consumer the option to have the defective vehicle replaced with a comparable new motor vehicle or to receive a cash refund "less a reasonable allowance for use." The defendants argue that the modifying clause modifies both replacement and refund. We disagree. The first sentence of sec. 218.015(2)(b) reads:

> If after a reasonable attempt to repair the nonconformity cannot be repaired, the manufacturer shall, at the direction of the consumer, *either* replace the motor vehicle with a comparable new motor vehicle *or* accept return of the motor vehicle and refund the full purchase price ... less a reasonable allowance for use to the consumer .... [Emphasis added.]

■

The word "or" has various meanings depending on the context in which used. *Brody v. Long,* 13 Wis. 2d 288, 295, 108 N.W.2d 662, 666 (1961). It is a coordinating particle that marks an alternative. *Id.* "Or" is usually disjunctive. *Id.* at 296, 108 N.W.2d at 666. The use of the word "either" confirms the legislature's intent to use "or" in the disjunctive, alternative sense.

The defendants argue that to avoid an absurd or unreasonable result the modifying clause should be construed to apply to both options. They point out that if the manufacturer is allowed an allowance for use only if the consumer elects a refund, no consumer will ever accept the refund option. We disagree. The defect may become immediately apparent. The consumer may be dissatisfied with the manufacturer's product and wish to purchase another make.

The defendants argue that because of the Chmill's long use of the car, they will receive a windfall if Ford is required to provide them with a new, comparable vehicle without an allowance for their use of the vehicle. Much of the 78,000 miles was driven after the Chmills presented the vehicle for repair. The Chmills should not suffer because Friendly Ford was unable to repair the defect in the vehicle nor should they be required to make an allowance to the defendants because they have been required to litigate their claim for more than a year, during which they were forced to use the vehicle for transportation. Allowing the Chmills replacement of the defective vehicle without allowing the defendants a reasonable allowance for such use does not lead in this case to an unreasonable or absurd result.

The defendants argue that it would be inequitable to allow the Chmills to drive their vehicle for over two years and 78,000 miles and not require them to make an allowance for this use. Since the statute controls, there is no room for defendants' equitable argument. The question is solely one of legislative construction.

Finally, at oral argument the defendants argued that the amendments made to sec. 218.015(2)(b), Stats., by 1987 Wis. Act 105 confirm their interpretation of the prior statute. Section 3, 1987 Wis. Act 105 divided the first sentence of sec. 218.015(2)(b) into subdivisions which make it clear that the reasonable allowance for use applies only to the refund option. 1987 Wis. Act 105 extended the remedies available under sec. 218.015(2) to a person who leases a motor vehicle under a written lease. The legislative reference bureau analysis indicates a legislative intention to apply the "current law" with respect to replace-

ment or refund under a lease arrangement.[5] Therefore, if anything, the legislative history of 1987 Wis. Act 105 clarifies that the prior law required an allowance for use only if the consumer elected the refund option.

■

Section 218.015(7), Stats., provides that the court may award a prevailing consumer costs, disbursements and reasonable attorney fees. This provision includes attorney fees for appellate work essential to the consumer's success. *Shands v. Castrovinci,* 115 Wis. 2d 352, 359, 340 N.W.2d 506, 509 (1983). On remand the trial court shall determine a reasonable attorney fee award to the Chmills for the appeal to this court.[6]

*By the Court.*—Judgment affirmed, and cause remanded for further proceedings consistent with this opinion.

■

---

[5]The legislative reference bureau may be resorted to as a source of information on questions of legislative intent. *State v. Vonesh,* 135 Wis. 2d 477, 483 n. 4, 401 N.W.2d 170, 174 (Ct. App. 1986).

[6]An award of attorney fees to a prevailing party under a remedial statute is necessary to fully enforce and give meaning to the rights created by the statute. *See Watkins v. LIRC,* 117 Wis. 2d 753, 765, 345 N.W.2d 482, 488 (1984).