In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-1832

BRUCE A. TAMMI,

*Plaintiff-Appellee,*

*v.*

PORSCHE CARS NORTH AMERICA, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04 C 1059—**Charles N. Clevert, Jr.**, *Judge.*

ARGUED JANUARY 8, 2008—DECIDED JULY 14, 2008

Before FLAUM, RIPPLE, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Bruce Tammi filed suit against
Porsche Cars North America, Inc. ("Porsche") in Wisconsin
state court seeking damages for violations of the Wisconsin
sin Lemon Law ("Lemon Law"), Wisconsin Statute Section 218.0171, involving the 2003 Porsche 911 Turbo he
leased from US Bank. Porsche removed the case to federal
court on the basis of diversity jurisdiction where the
case proceeded to a jury trial. The jury entered a verdict
in favor of Tammi and awarded him $26,600.00 in damages. The parties filed post-trial motions. The district

court denied Porsche's motion for judgment notwithstanding the verdict and granted Tammi's motion to alter the verdict on damages awarding Tammi $266,159.76. Porsche appeals. We affirm the jury's verdict on the sufficiency of the evidence. However, because Wisconsin law does not provide sufficient guidance on the important issue of pecuniary loss under its Lemon Law, we stay the remand of this appeal and certify four questions to the Wisconsin Supreme Court, pursuant to Circuit Rule 52 and Wisconsin Statute § 821.01.

I.

On May 30, 2003, Bruce Tammi, a member of the Porsche Club of America, leased a 2003 Porsche 911 Turbo. Tammi's lease through US Bank was for a 36-month term and required an initial payment of $1,999.85 and 35 monthly payments of $1,912.35 (for a total amount of lease payments of $68,844.50). The lease provided a purchase option at the end of the lease for $64,344.10 plus taxes, and it imposed a $395.00 termination fee if the lessee elected not to purchase the vehicle.

Tammi testified at trial that he leased the vehicle for use in competitive car club events as well as for his work commute, which consisted primarily of highway driving. The car Tammi leased was equipped with a rear spoiler that was designed to deploy automatically when the vehicle exceeded 75 m.p.h. in order to provide aerodynamic stability to the car. The spoiler was designed to retract automatically at 40 m.p.h. While he did not experience any problems with the spoiler when participating in auto-cross competitions, Tammi testified that on occasion when he drove the car on the highway between

55 m.p.h. and 70 m.p.h., the spoiler failed. Specifically, the spoiler would deploy, but would not retract. In addition, Tammi explained that when the spoiler failed, it prompted an audible chime to ring intermittently, a red warning light to illuminate, and a red warning message image to display in the center instrument cluster. Tammi stated that while he was able to temporarily stop the warning lights and sounds by stopping the vehicle, upon restarting the vehicle and returning to the highway, the warning would reappear and sound approximately every five minutes. Tammi found the warning light and the chimes startling and distracting. Tammi also complained that the car radio volume would blast upon start-up and then resume a normal volume after a few minutes. Tammi's wife also testified at trial that when she was driving the car no more than 65 m.p.h., the rear spoiler system failed causing her to pull off the highway, turn off the car, and call for assistance because she was unsure whether the car was safe to drive. Moreover, Tammi's wife stated that the warning lights and sounds continued after she restarted the car.

Tammi first took the car to Concours Service Inc. ("Concours"), a certified Porsche service provider, on March 2, 2004, noting that the rear spoiler failed to automatically retract and the radio volume was very loud when the car was first started. Between March 2004 and August 13, 2004, Tammi took the car to Concours, Zimbrick European of Madison, and International Autos at least eight times for service on the spoiler because of recurring failures without receiving a successful repair. Evidence of these service visits was presented at trial. At oral argument before this court, Porsche's attorney conceded that Tammi had taken his car in for repairs at least four

times. Tammi again experienced another spoiler failure after the August 13, 2004, service visit at Zimbrick.

On September 7, 2004, Tammi submitted to Porsche the required notice under the Wisconsin Lemon Law, Wisconsin Statute Section 218.0171. In that notice, Tammi indicated that his vehicle had been "made available for repair at least 4 times for the same defect during its first year of warranty," and demanded "[a] refund calculated in accordance with the Lemon Law, plus collateral costs." Tammi also listed the date, dealership, and problems reported for each service visit and indicated that the vehicle was leased from US Bank. Porsche responded with a letter dated October 6, 2004, rejecting Tammi's Lemon Law notice stating that it was its understanding that Tammi's vehicle had been repaired.

A little over a week later on October 14, 2004, Tammi filed a complaint in Wisconsin state court alleging a violation by Porsche of the Wisconsin Lemon Law, Wisc. Stat. § 218.0171. Porsche removed the case to federal court, with the court having diversity jurisdiction over the case because Tammi was a citizen of Wisconsin, Porsche is a Delaware corporation with its principal place of business in Georgia, and the amount in controversy exceeded $75,000.

During the course of the lease, Tammi paid the $1,999.85 initial payment followed by 29 monthly payments of $1,912.35 (for a total of $55,458.15), some of which were paid after Tammi filed suit. As the litigation continued and before his lease expired, Tammi purchased the car in December 2005 with a final payment of $75,621.88,

despite the problems that persisted with the rear spoiler.[1] Essentially, Tammi bought a vehicle that he claimed was a lemon.

In August 2006, the case proceeded to a jury trial. Before the case was submitted to the jury, the district court held two hearings with Tammi, an attorney who was proceeding pro se, and Porsche's counsel, Jeffrey Fertl. During the course of these hearings, the parties argued about the proper scope of damages in this case. Tammi stated that he was seeking recovery of his lease pay-ments ($57,458.00), the amount he paid for the purchase of the car under the buy-out option of the lease ($75,621.88), insurance ($2,457.85), winter tires ($2,044.11) and floor mats and an auto manual ($788.71), for a total of $138,370.55. In addition, Tammi sought to retain ownership of the car. Porsche asserted that the lease payments Tammi made were proper subjects of damage, but that the other items were not related to the vehicle repairs. The district court concluded that it was going to allow Tammi "to seek damages for the insurance and the like and reconsider after whatever verdict is returned." The parties stipulated that the mileage of the car as of the first service date was 6,576 miles.

The parties also discussed jury instructions and questions in the presence of the district court judge. The judge handed the parties a set of proposed instructions and

---

[1] Tammi testified at trial that he inspected the car's electronic scheme and replaced the fuse for the spoiler. At the time of trial, Tammi had only experienced one spoiler failure after his repair. At oral argument before this court, Tammi confirmed that he had repaired the spoiler problem with only one sub-sequent failure.

interrogatories, which they reviewed at that time. The first proposed jury question read: "During the first year after delivery of his 2003 Porsche, did the plaintiff have a nonconformity covered by the manufacturer's expressed warranty which substantially impaired the use, value or safety of his vehicle?" When the district court inquired of the parties regarding the acceptability of this question, Porsche's counsel responded that his only objection would be to the inclusion of all three terms ("use, value, or safety"), because he did not think the evidence supported the inclusion of all of these. Porsche continued, "[I]f the Court rules that there is sufficient evidence to submit use, value or safety to the jury, then the question is acceptable. I want to make certain for the record that I reserved or haven't waived my right to challenge the insufficiency of the evidence for any three of those." This first question remained unchanged, and the parties approved the remainder of the questions and instructions after additional discussion.

The case was submitted to the jury, which received instructions including instructions on the definition of nonconformity, the necessity for four repair attempts, and a general damages instruction. The jury returned a verdict in favor of Tammi concluding that the vehicle Tammi leased had a "nonconformity covered by the manufacturer's express warranty which substantially impaired the use, value or safety of his vehicle," and that Tammi had provided Porsche with at least four attempts to repair the nonconformity, which continued. The jury also awarded Tammi $26,600.00 for pecuniary loss resulting from the nonconformity.

In his post-trial motion, Tammi argued that rather than the general damages instruction it received, the jury should have received a specific Lemon Law damages

instruction. Porsche, in turn, filed a motion for judgment notwithstanding the verdict. The district court denied Porsche's motion, but granted Tammi's motion holding that as a matter of law Tammi was entitled to $266,159.76. Specifically, the district court concluded that Tammi was entitled to the $57,458.00 he paid in lease payments and the $75,621.88 purchase price he paid for the vehicle. The district court then doubled the sum of those two amounts as provided by Wisconsin Statute Section 218.0171(7) which provides for pecuniary loss to be doubled. The district court also concluded that Tammi was not entitled to the cost of the floor mats, winter tires, or insurance. Finally, the district court concluded that subsection 7 of the Lemon Law requires neither a reduction in pecuniary loss for use of the vehicle nor a return of the vehicle. Thus, the district court awarded Tammi $266,159.76 and retention of the car.

Porsche appeals, asserting that there was insufficient evidence for the jury to conclude that the vehicle had a nonconformity and that it violated the Lemon Law. In the alternative, Porsche requests a new trial on the issue of liability because it claims it was prejudiced when the district court submitted to the jury a question regarding substantial impairment of use, value or safety when there was no credible evidence to establish all three items and the verdict was against the overwhelming weight of the evidence. Finally, Porsche also contends that the district court erred in calculating Tammi's damage award.

## II.

Porsche argues that the district court erred when it denied its motion for a directed verdict before and after

the case was presented to the jury on the grounds that Tammi had failed to establish that there was a substantial impairment of his car's use, value, or safety. We review a motion for judgment as a matter of law de novo. Because this case is here on diversity jurisdiction, we look to the applicable state law for the standard for reviewing a motion for judgment as a matter of law. *Sokol Crystal Prod., Inc. v. DSC Commc'ns Corp.*, 15 F.3d 1427, 1431-32 (7th Cir. 1994). "In Wisconsin, a motion challenging the sufficiency of the evidence is to be denied unless 'the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain' the verdict." *Id.* (quoting Wis. Stat. § 805.14(1)).

Against this backdrop, we consider the standards for Lemon Law cases. The Lemon Law is triggered if a vehicle contains a nonconformity, that is, a "condition or defect which substantially impairs the use, value or safety of the motor vehicle, and is covered by an express warranty applicable to the motor vehicle." Wis. Stat. § 218.0171(1)(f). This impairment "must be more than a minor annoyance or inconvenience." Wisconsin Civil Jury Instruction 3301. However, a vehicle may possess a nonconformity even if the vehicle is drivable. *Dobratz Trucking & Excavating, Inc. v. Paccar, Inc.*, 647 N.W.2d 315, 320 (Wis. Ct. App. 2002) (citations omitted). Even vehicles with significant mileage have been found to possess nonconformities. *Chmill v. Friendly Ford-Mercury of Janesville, Inc.*, 424 N.W.2d 747, 750-51 (Wis. Ct. App. 1988) (affirming a finding of nonconformity on a vehicle with 78,000 miles). Jury findings of nonconformities have been affirmed in cases where a dump truck's power steering would not work when the

vehicle was stationary thereby impeding its ability to maneuver into tight spots at construction sites, *Dobratz Trucking*, 647 N.W.2d at 320-21, where a vehicle continually pulled to the left, *Chmill*, 424 N.W.2d at 751, and where a malfunction in a truck caused the vehicle to be out of service for 49 days and its owner to have to turn down three to five jobs while the truck was in the shop, *Schonscheck v. Paccar, Inc.*, 661 N.W.2d 476, 482 (Wis. Ct. App. 2003).

When reviewing a jury verdict in a Lemon Law case, "the determination whether a vehicle has a defect that substantially impairs its value, use or safety requires factual findings that are interconnected with a legal conclusion." *Dobratz Trucking*, 647 N.W.2d at 320 (citing *Chmill*, 424 N.W.2d at 750). "As a result, we give weight to the fact finder's decision, but not controlling weight." *Id.* "This standard of review is appropriate because the determination that something is 'substantial' requires a value judgment heavily dependent upon interpretation and analysis of underlying facts." *Chmill*, 424 N.W.2d at 750.

Taking the evidence presented in this case in the light most favorable to Tammi, we conclude that there was sufficient evidence presented that the vehicle Tammi leased suffered a nonconformity that substantially impaired its use. Based on Tammi's testimony, the vehicle suffered a rear spoiler failure approximately every third time the car was driven. This failure was not limited to the spoiler not retracting, but prompted recurring audible chimes and flashing warning symbols on the dash. These lights and noises could only be stopped, or rather paused because the cessation was temporary, by pulling the vehicle off the highway, turning off the car, and restarting it. Porsche seems to make light of the repeated lights and sounds by

noting that they did not constitute a substantial impairment because the warning could be reset by turning off the vehicle and removing the key. Tammi purchased the car for his work commute as well as for participation in car competitions. The jury could reasonably conclude that his use was substantially impaired when what would otherwise be a normal driving experience was punctuated by frequent chiming and flashing lights on his car's deck. Moreover, when the spoiler failed, Tammi's trips were interrupted because he had to stop the vehicle in order to put an end to a dinging, only to have the sound and flashing lights return once he resumed his trip. A purchaser of a brand new car, particularly a Porsche, would not expect to encounter such disruptions every third time he drives that vehicle. In light of this evidence and the weight afforded to a fact finder's decision on the existence of a nonconformity, we conclude that the evidence was sufficient for the jury to conclude that the rear spoiler failure constituted a substantial impairment of the use of the vehicle. Therefore, we affirm the district court's denial of Porsche's motion for judgment notwithstanding the verdict.[2]

In the alternative, Porsche requests a new trial arguing that it was prejudiced when the district court submitted

---

[2] Porsche also challenges the sufficiency of the evidence as to the substantial impairment of the value and safety to the vehicle resulting from the rear spoiler malfunction as well as the sufficiency of the evidence related to Tammi's claim that the radio malfunctioned. Because the statute only requires that there be a substantial impairment of either the use, value, *or* safety and we conclude that there was sufficient evidence to support the jury's finding of a nonconformity as it relates to use, we need not address these additional arguments.

to the jury "a question regarding substantial impairment of the use, value or safety when there was no credible evidence to establish all three items, as well as on the ground that the verdict was contrary to the clear weight of the evidence." In other words, Porsche contends that the evidence on the safety and value of the vehicle was insufficient for the district court to have submitted to the jury the question of substantial impairment on the theories of safety and value. Despite our conclusion that there was sufficient evidence for the jury to conclude that there was a substantial impairment based on use, we will address this alternate argument because Porsche asserts that a new trial is warranted because "the jury's verdict does not allow one to conclude whether any of these improper bases were considered by the jury [in entering its verdict]." We review a district court's decision whether to grant a new trial for an abuse of discretion and will only disturb that decision under exceptional circumstances. *David v. Caterpillar*, 324 F.3d 851, 863 (7th Cir. 2003). "A new trial may be granted if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *Id.*

For the reasons discussed above, the jury's verdict in this case was not against the clear weight of the evidence regarding the substantial impairment of the use of the vehicle. Nor was the conduct of the trial unfair to Porsche. Porsche is correct that "a jury should not be instructed on a[n] [issue] for which there is so little evidentiary support that no rational jury could accept [it]." *E. Trading Co. v. Refco, Inc.*, 229 F.3d 617, 621 (7th Cir. 2000). However, presentation of such issues in the jury instructions does not necessitate that a verdict be set aside. As we have previously noted, "[i]t cannot just be assumed

that the jury must have been confused and therefore that the verdict is tainted, unreliable." *Id.* at 622. "This is just a case of surplusage, where the only danger is confusion, and reversal requires a showing that the jury probably was confused." *Id.* (citation omitted). Porsche does not assert that the jury was confused. Moreover, Porsche had the opportunity to argue for separate jury questions on each of the bases for nonconformity: value, safety, and use, as well as having each of these questions posed for both the spoiler and the radio. Porsche did not request such jury questions either at the hearing or in its proposed verdict form. Rather, when the jury instructions were being specifically discussed, Porsche only sought to preserve its sufficiency of the evidence challenge and did not request an instruction other than the one that was actually posed to the jury. Had Porsche made such a request, it might have been able to demonstrate that the jury was confused if there was no evidence on an individual issue in which the jury found a nonconformity, but it cannot now claim it was prejudiced when all of the different types of nonconformity (i.e. use, value, or safety) were presented to the jury in the disjunctive in a single question. *Id.* at 622 (noting that if the appellant had asked the district judge to submit an interrogatory to the jury on the contested issue and the jury had checked the box in favor of the appellee, then the appellant "would then have had a solid basis for seeking a new trial."). In light of the evidence presented at trial and the lack of prejudice to Porsche, we conclude that the district court did not abuse its discretion in denying Porsche's motion for a new trial.

We now turn to the issue of damages. At trial, Tammi sought recovery of his lease payments ($57,458.00), the

amount he paid to purchase the car ($75,621.88), the cost of insurance ($2,457.85), winter tires ($2,044.11), floor mats, and an auto manual ($788.71) for a total of $138,370.55. In addition, Tammi sought to retain the car. The district court granted Tammi his lease payments and purchase price, which it doubled in accordance with subsection (7) of the Lemon Law. The court also permitted Tammi to keep the car.

Porsche asserts that the district court's award of $266,159.76 in damages was in error. Obviously, it does not challenge the district court's rejection of Tammi's request for insurance, tire, floor mat, and manual costs. Porsche insists that Tammi is only entitled to the repayment of his lease payments with that amount being doubled pursuant to subsection (7). Porsche and amici both contend that under subsection (7) a consumer is only entitled to recover damages "caused by a violation" of the Lemon Law. Their position is that when a lessee voluntarily purchases a vehicle after a lease expires, the purchase price paid is not a damage "caused by a violation" of the Lemon Law. Moreover, they assert that any loss suffered is self-inflicted. His voluntary purchase is, thus, "not a cost incurred by him as a result of any statutory violation." And even if he is entitled to that amount, Porsche claims it certainly should not be subject to the Lemon Law's doubling provision. Finally, Porsche asserts that it was error for the district court to permit Tammi to retain the car and not reduce the damage award by a reasonable allowance for Tammi's use of the car. Tammi responds that district court's damage award was in keeping with the Lemon Law's purpose of protecting consumers and that without the recovery of the amount he paid in purchasing the car, there would not be a sufficient motivation for Porsche to comply with the Lemon Law in future cases.

We review questions regarding the interpretation of statutes de novo. *United States v. Genendo Pharm., N.V.*, 485 F.3d 958, 962 (7th Cir. 2007). In Wisconsin, "[t]he cardinal rule of statutory interpretation . . . is to discern the intent of the legislature." *Hughes v. Chrysler Motor Corp.*, 542 N.W.2d 148, 149 (Wis. 1996) (internal quotation and citation omitted). The legislative intent is ascertained by reviewing the statutory language, history, subject matter, purpose, and scope. *Id.* In the case of remedial statutes, they "should be liberally construed to suppress the mischief and advance the remedy the statute intended to afford." *Id.* at 149-50.

The Wisconsin Lemon Law is a remedial statute through which the legislature intended to "improve auto manufacturers' quality control . . . [and] reduce the inconvenience, the expense, the frustration, the fear and [the] emotional trauma that lemon owners endure." *Hughes*, 542 N.W.2d at 151 (citation omitted). The principal motivation of the Lemon Law "is not to punish the manufacturer who, after all, would far prefer that no 'lemons' escape their line. Rather, it seeks to provide an incentive to that manufacturer to promptly return those unfortunate consumers back to where they thought they were when they first purchased that new automobile." *Id.* at 152-53.

The Lemon Law achieves this goal through the protection of consumers. A "consumer" under the Lemon Law includes a purchaser of a new motor vehicle, a person who can enforce a warranty, and "[a] person who leases a motor vehicle from a motor vehicle lessor under a written lease." Wis. Stat. § 218.0171(1)(b)(1), (3), & (4). If a consumer reports a nonconformity to the manufacturer and makes "the motor vehicle available for repair before

the expiration of the warranty or one year after first delivery of the motor vehicle to a consumer, whichever is sooner, the nonconformity shall be repaired." Wis. Stat. § 218.0171(2)(a).

If the nonconformity is not repaired after at least four tries or if the vehicle is out of service for at least thirty days due to nonconformities, the Lemon Law directs how the manufacturer is to proceed depending on the type of consumer involved. If the consumer is either a purchaser of a new motor vehicle or a person who may enforce a warranty, the manufacturer must do one of the following at the consumer's direction:

> Accept return of the motor vehicle and replace the motor vehicle with a comparable new motor vehicle and refund any collateral costs.
>
> [or]
>
> Accept return of the motor vehicle and refund to the consumer and to any holder of a perfected security interest in the consumer's motor vehicle, as their interest may appear, the full purchase price plus any sales tax, finance charge, amount paid by the consumer at the point of sale and collateral costs, less a reasonable allowance for use. Under this subdivision, a reasonable allowance for use may not exceed the amount obtained by multiplying the full purchase price of the motor vehicle by a fraction, the denominator of which is 100,000 or, for a motorcycle, 20,000, and the numerator of which is the number of miles the motor vehicle was driven before the consumer first reported the nonconformity to the motor vehicle dealer.

Wis. Stat. § 218.0171(2)(b)2a&b.

If the consumer is a lessor, the manufacturer shall

> accept return of the motor vehicle, refund to the motor vehicle lessor and to any holder of a perfected security interest in the motor vehicle, as their interests may appear, the current value of the written lease and refund to the consumer the amount the consumer paid under the written lease plus any sales tax and collateral costs, less a reasonable allowance for use.

Wisc. Stat. § 218.0171(2)(b)3a. The statute goes on to define "current value of the written lease" as follows:

> [T]he current value of the written lease equals the total amount for which that lease obligates the consumer during the period of the lease remaining after its early termination, plus the motor vehicle dealer's early termination costs and the value of the motor vehicle at the lease expiration date if the lease sets forth that value, less the motor vehicle lessor's early termination savings.

Wis. Stat. § 218.0171(2)(b)3b.

The manufacturer has thirty days in which to provide a refund or replacement after the consumer presents it with the vehicle. Wis. Stat. § 218.0171(2)(c) & (cm). Failure to provide a refund is a violation of the Lemon Law. *Varda v. Gen. Motors Corp.*, 626 N.W.2d 346, 358 n.13 (Wis. Ct. App. 2001) (citing *Church v. Chrysler Corp.*, 585 N.W.2d 685 (Wis. Ct. App. 1998)). In the instance where the manufacturer neither repairs the nonconformity nor accepts return of the vehicle and gives a refund, the consumer is not without recourse because the Lemon Law also provides that,

> a consumer may bring an action to recover for any damages caused by a violation of this section. The

court shall award a consumer who prevails in such
an action twice the amount of any pecuniary loss,
together with costs, disbursements and reasonable
attorney fees, and any equitable relief the court deter-
mines appropriate.

Wisc. Stat. § 218.0171(7). The statute does not define
"pecuniary loss," which is the core issue in this case,
though it is clear and undisputed that, whatever that
amount might be, it is entitled to doubling under sub-
section (7).

Wisconsin law provides minimal guidance on what
constitutes pecuniary loss. In the context of a consumer
who is a purchaser, the Wisconsin Supreme Court has
held that pecuniary loss consists of the vehicle's full
purchase price regardless of the amount the consumer
actually paid. *Hughes*, 542 N.W.2d at 151-52. *Hughes*
overturned the Wisconsin appellate court's earlier opin-
ion, *Nick v. Toyota Motor Sales*, 466 N.W.2d 215 (Wis.
Ct. App. 1991), which relied upon subsection (2)(b)2b of
the Lemon Law to conclude that the pecuniary loss in the
case of a new vehicle purchaser included the amount of
the purchase price the consumer actually paid. Noting
that *Nick* did not address the double damage disparity
that would result depending on whether a consumer
paid for the vehicle with his own money or with bor-
rowed funds, *Hughes* concluded that

> [t]his result is inconsistent with the legislative goal of
> encouraging manufacturers to deal promptly and fairly
> with all purchasers of new vehicles. For that reason,
> any language in *Nick* contrary to our holding here
> that pecuniary loss includes the full purchase price of
> the vehicle to the consumer is overruled.

*Hughes*, 542 N.W.2d at 152.

In the context of a consumer who is a lessee, the Wisconsin Court of Appeals in *Estate of Riley v. Ford Motor Co.*, 635 N.W.2d 635 (Wis. Ct. App. 2001), vacated a trial court's award of pecuniary loss concluding that pecuniary loss does not include the current value of the written lease. The Wisconsin Court of Appeals noted that "[w]hen the consumer brings an action in court, he or she is limited to the remedies under § 218.015(7). This section does not mention the current value of the written lease." *Id.* at 639.[3] The *Riley* court continued, "[t]he consumer's pecuniary loss does not include the termination value of the vehicle because the consumer is not out of that money. The 'lessor' (and/or holder) owns a leased vehicle and, if it is a lemon, the lessor owns a lemon. When the consumer chooses a refund, he or she must return the vehicle to the manufacturer; therefore, the lessor does not have the vehicle and must be compensated for the value of the vehicle." *Id. Riley* did not address whether the scope of pecuniary loss is limited, as Porsche contends, to the lease payments or whether it encompasses the purchase price a lessee pays when exercising the purchase option under the lease.

Porsche argues that Tammi is not entitled to the purchase amount he paid and that pecuniary loss is limited to the relief provided in subsection (2)(b)3, noting that nowhere in the Lemon Law does it permit a lessee to recover the remaining value of the leased vehicle. In support of this position, Porsche cites *Varda v. General*

---

[3]  The Lemon Law was renumbered in 1999 from Wisconsin Statute Section 218.015 to Section 218.0171, but the substance of the law was unchanged. *Kiss v. Gen. Motors Corp.*, 630 N.W.2d 742, 744 n.1 (Wis. Ct. App. 2001).

*Motors Corporation*, 626 N.W. 2d 346 (Wisc. Ct. App. 2001). In *Varda*, the plaintiff leased a vehicle in 1996 that began having brake problems that same year. Upon the lease's expiration in 1998, Varda purchased the vehicle pursuant to the lease terms. Then in 1999 after the purchase, Varda made a Lemon Law demand claiming the status of a consumer who is a lessee as described in subsection (1)(b)4. *Id.* at 349. The Wisconsin Court of Appeals concluded that a person who purchases a vehicle at the conclusion of the lease and then attempts to invoke relief under subsection (2)(b)3 (the subsection directing how a manufacturer should respond to a lessee's Lemon Law demand after repairs are unsuccessful), "is no longer a consumer within the meaning of [§ 218.0171(1)(b)4]." *Id.* at 355. Despite Porsche's invocation, *Varda* is not on point because that case involved an individual who sought the relief that the Lemon Law affords lessees when that person was no longer a lessee. Porsche posits that "[a]t the time of purchase, Tammi was no longer a consumer under the statute who was entitled to recover the amounts paid to purchase the vehicle[, thus] he is only entitled to the relief that was available at the time he initiated the subject action." *Varda* still does not buttress Porsche's positions or resolve the question of what constitutes pecuniary loss because of the factual distinctions between it and Tammi's case. Tammi made his Lemon Law demand while still a lessee, and purchased his vehicle only after Porsche rejected his Lemon Law demand and after he sought relief under subsection (7).

Relying upon the requirement that a lessee return a vehicle when given a refund under subsection (2)(b)3a, Porsche asserts that Tammi is not allowed to keep the car and also recover double the amount of his pecuniary

loss under subsection (7). Porsche also seeks a reduction in Tammi's damage recovery for reasonable use as provided in subsection (2)(b)2b when the consumer is a purchaser or one who can enforce a warranty. Wisconsin law, both case and statutory, is silent on these questions, and as such, guidance from the Wisconsin Supreme Court on how to resolve these issues would be most helpful. Resolution of these issues and the others presented in this case about the scope of pecuniary loss implicates important policy considerations that inform the Wisconsin Lemon Law, and we believe that the Wisconsin Supreme Court is best suited to resolve them.

Pursuant to Circuit Rule 52:

> When the rules of the highest court of a state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, sua sponte or on motion of a party, may certify such a question to the state court in accordance with the rules of that court, and may stay the case in this court to await the state court's decision of the question certified. The certification will be made after the briefs are filed in this court. A motion for certification shall be included in the moving party's brief.

The Wisconsin Supreme Court is permitted to answer certified questions from this court "which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of [Wisconsin]." Wis. Stat. § 821.01.

Certification is appropriate in a case which "concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue." *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 514 F.3d 651, 659 (7th Cir. 2008) (citation omitted). Other considerations are the interest the state supreme court has in the development of state law and "the likelihood that the result of the decision will almost exclusively impact citizens of that state." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001). Certification is not appropriate, however, for decisions that are highly fact-specific and lack general significance. *Id.*

This case is well-suited for certification. We recognize the import of this decision on the sale of motor vehicles throughout Wisconsin for consumers and manufacturers alike. The submission of an amicus brief by various auto manufacturer associations and recreational vehicle manufacturers demonstrates the significance of this decision. The resolution of what constitutes pecuniary loss when the consumer is a lessee is of vital public concern to the citizens of Wisconsin and manufacturers whose vehicles those citizens purchase. While based on the specific lease and facts in this case, the damages sought are not unique in the context of an automobile lease and the issues that surround it are ones that will likely recur. Further, resolution of these questions by the Wisconsin Supreme Court will resolve this case and provide it "an opportunity to illuminate a clear path on the issue." Because the answers to these questions rely heavily upon the intent of the legislature and their

policy considerations in enacting the Lemon Law, we conclude that the Wisconsin Supreme Court is "far more familiar with the policy choices that have been made, and have far more direct responsibility for the administration of justice within the state than do members of this court." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 639 (7th Cir. 2002).

Accordingly, we respectfully certify the following questions to the Wisconsin Supreme Court on the issue of pecuniary loss under Wisconsin Statute Section 218.0171:

> 1. When a consumer defined in Wisconsin Statute Section 218.0171(1)(b)4 brings an action pursuant to subsection (7), if that consumer, after making his Lemon Law demand, then exercises an option to purchase and buys the vehicle as provided in the lease, is the consumer then entitled to recover the amount of the purchase price?

> 2. If the consumer defined in Wisconsin Statute Section 218.0171(1)(b)(4) is entitled to recover the vehicle purchase price when he exercises the purchase option provided in the lease, does the purchase amount qualify as pecuniary loss subject to the doubling provision in subsection (7)?

> 3. If the answers to questions 1 and 2 are in the affirmative, is the consumer permitted to keep the purchased vehicle in addition to the receipt of the damage award or must the vehicle be returned to the manufacturer?

> 4. Is a damage award under subsection (7) subject to a reduction for reasonable use of the vehicle?

To the extent that they think it necessary, we invite the Justices of the Wisconsin Supreme Court to reformulate these questions and expand their inquiry.

The Clerk of the Court is directed to transmit the briefs and appendices in this case as well as a copy of this opinion. The Clerk shall also transmit any part of the record that the Wisconsin Supreme Court might request, and we stay this matter in this court while the Wisconsin Supreme Court considers this matter.

AFFIRMED, in part; QUESTIONS CERTIFIED.